### Felix Johnson v. The State.

No. 10692.   Delivered March 2, 1927.

Rehearing denied April 20, 1927.

**1.—Murder—Special Venire—Motion to Quash—Properly Overruled.**

Where appellant moved to quash the special venire tendered him on his trial for murder, upon the ground that some of the jury commissioners were disqualified, and the trial judge having stated that the averments in the motion were not established by the evidence, without the evidence adduced being before us, this court is not in a position to review the action of the trial court in passing upon the motion.

**2.—Same—Continued.**

The fact that one of the jury commissioners was a deputy sheriff, and another a person who had served upon the jury within six months, was not such disqualification, as would nullify their action in performing their duty as jury commissioners.   See Benton v. State, 52 Tex. Crim. Rep. 360; Young v. State, 91 Tex. Crim. Rep. 511.

**3.—Same—Order of Trial—Within Discretion of Court.**

Where appellant, on trial for the murder of Jess Hanson, was also under indictment charging him with rape upon the wife of Hanson, and moved the court to place him on trial first in the rape case, his motion was properly overruled, no abuse in the discretion of the court being shown. Unless there was evidence of injury to the accused revealing an abuse of the discretion of the trial judge, this court would not be authorized to review his action in setting the appellant's murder case for trial in advance of the rape case.   See Todd v. State, 57 Tex. Crim. Rep. 26, and other cases cited.

**4.—Same—Continued—Rule Stated.**

Unless cases have been set, they should be called in the order in which they appear upon the docket. Art. 584, C. C. P. 1925. The trial judge, however, has some discretion in the matter, and in the absence of injury shown, a reversal would not be ordered because the case is called out of its numerical order. Capital cases may be set in advance for trial, so that a special venire may be ordered and summoned. See Art. 590, C. C. P. 1925.

**5.—Same—Continuance—For Immaterial Testimony—Properly Refused.**

Where appellant requested a continuance on account of the absence of a witness for whom due diligence had been used, it appearing that the facts set out that were expected to be proven by said witness, were not material to the defense, nor likely to have produced a different result upon another trial, with the absent testimony before the jury, the motion for a continuance was properly denied.

**6.—Same—Evidence—Disinterring Body of Deceased—Properly Refused.**

Where appellant, three months after the burial of deceased, filed a motion requesting that the body be exhumed and examination made of the body to discover if the range of the bullet comported with appellant's defensive theory, the motion was properly overruled. While it has been held that the court has the inherent power to cause a body to be exhumed and examined, where the ends of justice demands it, under the facts in this case the necessity for an examination was not made apparent. See Gray v. State, 55 Tex. Crim. Rep. 90.

**7.—Same—Charge of Court—On Issue Not Raised—Properly Omitted.**

Where there was no evidence raising the issue, there was no error in failing to charge upon the presumption arising from the use of a deadly weapon, as is required in some cases by statute. There is no semblance of testimony that deceased was using a deadly weapon.

**8.—Same—Bill of Exception—Qualification by Court—Controls.**

Where appellant complains of the argument of counsel for the state, and his bill is qualified by the court with the statement that the language complained of was not used by the State's Attorney, no error is shown, as the qualification controls the bill.

**9.—Same—Evidence—Properly Admitted.**

There was no error in permitting the pistol which was found in the possession of appellant at the time of his arrest, after the homicide to be exhibited to the jury.

**10.—Same—Bill of Exception—As Qualified—Shows No Error.**

Where a bill of exception complaining of the exclusion of testimony offered by appellant is qualified with the statement of the trial judge that part of the testimony which the bill states was excluded, was in fact received, and refers to the statement of facts, which confirms the qualification, no error is presented.

**11.—Same—Bill of Exception—Incomplete—Presents No Error.**

Where a bill of exceptions complains that on cross-examination of the wife of deceased, appellant asked the witness the question "Jesse (the deceased) was selling whiskey around there, wasn't he?" and the court said, "The objection is sustained for the present," said bill is incomplete and shows no error.

**12.—Same—Evidence—Search and Seizure Law—Not Involved.**

Where appellant objected to testimony of parties who entered the house shortly after the killing, on the ground that they had no search warrant authorizing their entry, such objection is untenable. They were not in the house of appellant, and he was not, therefore, in a position to urge the

objection based upon the search and seizure statute.  See Agnello v. U. S., 46 Sup. Ct. Rep. 4, 70 Law Ed. 1.

### 13.—Same—Statements of Accused—Held Admissible.

The testimony of two witnesses, that on the night of the homicide, and soon thereafter, the appellant said in their presence, that he had killed "one of the boys," was properly admitted.  It was probably res gestae, but whether so or not, it was an admission of appellant bearing upon the offense, and its connection with other facts rendered it relevant.

### 14.—Same—Evidence—Immaterial—Properly Excluded.

There was no error in refusing to permit appellant to prove that there was no preacher at the funeral of deceased, in order, as he contends, to show that deceased was a bad man.  As the record appears, the exclusion of this testimony was not harmful.

#### ON REHEARING.

### 15.— Same — Evidence — Exculpatory. Statements — Not Necessary to Be Disproved.

Where the appellant, on his cross-examination of the witness Morgan, disclosed exculpatory statements made by such witness, it was not incumbent upon the state to disprove such statements.  A careful re-examination of the record confirms us in our disposition of all matters presented, in the original opinion, and the motion for rehearing is overruled.

Appeal from the District Court of Cherokee County.  Tried below before the Hon. C. A. Hodges, Judge.

Appeal from a conviction of murder, penalty life imprisonment in the penitentiary.

The opinion states the case.

*Wm. Emerson Stone* of Jacksonville, *R. C. Musslewhite* of Reisel, and *Malcomb M. Guinn* of Rusk, for appellant.

*Sam D. Stinson,* State's Attorney, and *Robert M. Lyles,* Assistant State's Attorney, for the State.

MORROW, Presiding Judge.—The offense is murder, punishment fixed at confinement in the penitentiary for life.

Appellant and deceased were both negroes.  According to the state's testimony, appellant came to the house in which the deceased, Jess Hanson, and his wife, Annie Hanson, resided. He was in company with a man called Flunky.  The deceased was not at home at the time, and appellant was refused entrance by Annie Hanson.  The door was not locked, however, and he later returned alone and was discovered by the witness Annie Hanson, standing by the bedside.  Jess Hanson was aroused and appellant said:

"Get up and get up damned quick and get his clothes on, you and your wife; I have a warrant for you."

Deceased replied: "Go on, nigger; I haven't got time for any foolishness; I am sleepy."

Appellant then said: "You take that," and shot the deceased while he was lying in bed. The alarm was given and the neighbors came and found the body of deceased lying upon the bed with a gunshot wound in his breast. Several witnesses testified that appellant on the same night told them he had gotten into trouble and had killed "one of the boys."

Apparently some of these statements were res gestae as they occurred at a very short time subsequent to the homicide and at a short distance from the scene of the killing. At the time of his arrest, appellant possessed a 380 caliber Colt's automatic pistol.

In qualifying the bill in which complaint was made of the refusal of the appellant's motion to quash the venire upon the ground that some of the jury commissioners were disqualified, the trial judge stated that the averments in the motion were not supported by evidence. The motion being a mere pleading, setting up matters of fact, proof of the averments would be essential; and this court, without the evidence adduced before it, is not in a position to review the action of the trial court in overruling the motion. However, that one of the jury commissioners was a deputy sheriff and another a person who had served upon the jury within six months was, as we understand the precedents, not such disqualification as would nullify their action in performing their duties as jury commissioners. See Benton v. State, 52 Tex. Crim. Rep. 360; Young v. State, 91 Tex. Crim. Rep. 511.

There are several bills of exceptions in which complaint is made of the failure of the court to continue or postpone the trial. The offense took place on the 25th of June. The indictment was returned on the 30th of July. The trial took place on the 1st of September. According to the averments, appellant was indicted for the offense of rape upon Annie Hanson, as well as for the murder of her husband, Jess Hanson. He sought to have the trial for rape tried first upon the theory, as stated in the motion, that he was not guilty of rape, and that on his trial for murder the facts upon which the indictment for rape was found would be treated as a motive for the homicide. The court declined to approve the truth of the averments in the bill and referred to the statement of facts from which it appears that upon the trial no testimony was introduced touching the charge of rape. It further showed that special venires had been ordered in both

cases, but that in the rape case the venire had been quashed. Unless cases have been set, they should be called in the order in which they appear upon the docket. See Art. 584, C. C. P., 1925. The trial judge, however, has some discretion in the matter, and in the absence of injury shown, a reversal would not ordinarily be ordered simply because the case is called out of numerical order. See Todd v. State, 57 Tex. Crim. Rep. 26; Moore v. State, 94 Tex. Crim. Rep. 489; Payne v. State, 100 Tex. Crim. Rep. 241. The statute contemplates that capital cases may be set in advance for trial so that a special venire may be ordered and summoned. See Art. 588, C. C. P. The trial court has discretion with reference to the date of setting for trial. See Art. 590, C. C. P., 1925. As stated above, appellant requested that the rape case against him be tried in advance of the murder case. Unless there was such evidence of injury to the accused as revealed an abuse of the discretion by the trial judge, this court would not be authorized to review his action in setting the appellant's murder case for trial in advance of the rape case. In his motion appellant said that he desired the trial of the rape case first as its pendency would embarrass him on taking the witness stand on the trial of the murder case. The record is utterly silent, however, touching what facts there were in the rape case and in what way the two were connected. Furthermore, no evidence relating to the rape case was introduced, and no abuse of discretion is shown.

Appellant sought a continuance upon the further ground that a witness named J. Cole was absent. It appears from this bill that after indictment he caused a subpœna to be issued for an unnamed witness, who was a section hand in the employe of the Cotton Belt Railroad, and a member of a certain extra gang, and went by the name of Flunky. This subpœna was returned showing service upon a witness by the name of Collier. According to the averments of the motion, appellant expected to prove by Flunky or Cole that he was at the village of Wells, where the homicide took place, at the time of the tragedy; "that he and the appellant went to the home of Hanson for the purpose of buying intoxicating liquor; that Jess Hanson had promised to sell him some liquor; that he had on numerous occasions bought whiskey from Hanson; that the witness Cole had on various occasions had sexual intercourse with the wife of the deceased; that she had told the appellant and the witness to tell J. W. Boose that she would see him if he came to her house on the night upon which the homicide took place, but could not see him in a car because she did not know where her

husband was." As we understand the record, after the return
of the subpœna, which was issued for Flunky and returned
with service upon Collier, appellant again sought process for
Cole, the issuance of which was ordered by the court and
served.  Upon the hearing of the motion, the evidence adduced
showed that Cole was a transient person and probably had gone
to the State of Louisiana, where he resided.  There was evi-
dence on the trial that Collier went by the name of Flunky;
that he was a section hand on the railroad; that he saw the
appellant on the night of the homicide; that appellant told
him that he had killed a man and asked him to help evade
arrest.  The judge trying the case, in qualifying the bill, stated
that he did not regard the alleged testimony of the absent
witness material.  We confess our inability to perceive the
importance of the testimony.  There is no controversy over
the identity of the assailant of the deceased nor of the fact
that the appellant had twice been at the home of the deceased
on the night of the homicide.  No defensive theory is advanced
by the evidence, nor does the purported testimony of the absent
witness impress us as presenting any relevant matter tending
to excuse or mitigate the offense.  It cannot be justly said that
the presence of the witness, upon another trial, would have
rendered a different result probable.  In overruling the motion
to continue the learned trial judge did not, in the opinion of
this court, abuse the discretion which was vested in him by law.

Appellant filed a motion to have the body of the deceased
disinterred in order to ascertain whether the range of the
bullet would coincide with his theory mentioned or that of the
state.  In the motion he averred that the deceased was shot
while standing and reaching for a gun which hung on the wall.
The court heard evidence with reference to the matter, the
details of which it is not deemed necessary to reproduce.  The
application, it seems, was filed on the 16th day of August, and
the trial took place on the 1st of September.  The state's evi-
dence heard upon the motion was to the effect that the condi-
tion in which the body was buried and the lapse of time would
render it improbable, if not impossible, that the range of the
bullet could be ascertained at the time of the filing of the
application, which was sixty days after the homicide.  Testi-
mony of physicians was heard upon the subject, and the court
determined, upon the hearing of the evidence, that the testi-
mony made it clear that the disinterment of the body would
serve no useful purpose.  He declined to issue a commission
to examine the body but interposed no obstacle to its disinter-

ment if the appellant could arrange for it. It affirmatively appears that appellant disclaimed the ability to pay the expense of disinterment and the examination. Under the facts adduced and set up in the bill of exceptions, we are of the opinion that no error was shown to have been committed by the trial judge. Appellant refers to the case of Gray v. State, 55 Tex. Crim. Rep. 90, in which case the inherent power of the court to cause a body to be exhumed where the ends of justice demands it, was affirmed. Under the facts then before the court the necessity for an examination of the body was made apparent. This, however, arose from the affirmative testimony presenting a controverted issue touching the entrance of the bullets which killed the deceased as bearing upon the relative position of the parties at the time of the homicide. In the present case, so far as developed by the evidence upon the trial, the relative position of the parties is not a controverted matter. That the deceased was shot by the appellant and the wound taking effect in his breast is established by direct and positive testimony. No evidence attempting to excuse or justify the homicide was before the court. The state's evidence was to the effect that the deceased was lying upon his bed at the time the shot was fired. He was in his night clothes and in bed with his wife. According to the evidence, appellant entered the house at midnight as an intruder and shot the deceased without provocation or excuse. As the record is presented, we fail to perceive in what manner the range of the bullet would have tended to solve any important or material issue in the case. If there had been testimony supporting the appellant's supposed theory, the matter would perhaps come in a different light. However, in view of the qualification of the court and the decision by him upon sufficient evidence, no light would be thrown upon the range of the bullet by exhuming the body. The bill, therefore, presents no error.

The bills complaining of the insufficiency of the evidence are without merit.

The bill complaining of the failure of the court to charge upon the presumption arising from the use of a deadly weapon, as required in some cases by statute, is without merit, for the reason that the record is silent touching the use of any deadly weapon or its possession by the deceased. The state's testimony showed affirmatively that at the time the deceased was shot, he was lying in bed. There is no semblance of testimony that he was using a deadly weapon. Appellant did not testify and offered no testimony in support of that theory.

From bill No. 9 it appears that counsel for the state, in addressing the jury, said:

"The defendant's attorneys say that there is no motive for the defendant killing the deceased, Jesse Hanson, but what did the defendant mean when he took the deceased's wife up the road about 150 yards from their home directly after the killing, and for which offense he now stands charged in this court under indictment."

The appellant's objection to the argument was sustained and the jury instructed to disregard it. However, the bill, as qualified, challenges the correctness of the statement imputed to the District Attorney and states that the attorney did not say that the appellant was charged with any offense. In approving said bill No. 9, the court refers to the qualification in bill No. 1, which is to the effect that counsel for the state in the course of his argument "only stated that the defendant carried the witness, Annie Hanson, about a hundred yards from her home," and thus declines to certify the correctness of the bill quoting the argument imputed to counsel. He also refers to the statement of facts from which it appears that the witness, Annie Hanson, on cross-examination by appellant's counsel, testified that when the appellant was discovered in the house, he stated that he had a warrant. She said:

"I will state that he said he was an officer long after he carried me off."

She also stated that she was about 100 yards from the house when she came back and went to Selman's house. It seems that there was some basis in the evidence for the remark. As the bill is qualified, it appears that there is no mention of the rape case nor of any indictment, and the mere fact that counsel for the state used the language which the judge certified, especially in view of the action of the court in withdrawing it, the bill is not regarded as showing error which would warrant a reversal of the judgment.

There was no error in permitting the pistol which was found in the possession of the appellant at the time of his arrest after the homicide to be exhibited to the jury.

Bill No. 12 reflects an effort upon the part of the appellant in his cross-examination of Annie Hanson to lay a predicate for impeaching her with reference to a statement imputed to her indicating that she had had quarrels with her husband which were the motive for slaying him. The averment in the bill is contradicted by the court's qualification. However, the bill fails to specify with sufficient accuracy the time and place the imputed

statement was made or the name of the person in whose presence it occurred. Moreover, the qualification states that part of the testimony which the bill says was excluded was in fact received, and refers to the statement of facts in support of this contention, which, upon examination, verifies the court's statement. The bill fails to show error.

Bill No. 13, as qualified, shows that the appellant's counsel asked the state's witness, Annie Hanson, while upon the stand, the following question:

"Jesse was selling whiskey around there, wasn't he?"

The court said: "The objection is sustained for the present."

The bill shows no error.

Several bills complain of the testimony of witnesses who went to the home of the deceased after his wife had reported the homicide. Each of the witnesses testified to the condition of the body, the condition of the house, and gave a general description of the surroundings. The admissibility of this testimony was challenged upon the ground that it was violative of the law forbidding the search of a private dwelling without a warrant and also forbidding the receipt of evidence where the search was made without a warrant. The objection is untenable. The parties were in the house with the consent of the occupant, the wife of deceased. They were not in the house of the appellant, therefore, he was not in a position to urge the objection based on the search and seizure statute. Moreover, the witnesses, before entering, heard a gunshot and saw the body of the deceased lying upon the bed. See Agnello v. U. S., 46 Sup. Ct. Rep. 4, 70 L. Ed. 1.

The objection to the testimony of the two witnesses by the name of Jordan that appellant, upon the night of the homicide and soon thereafter, said in their presence, that he had killed "one of the boys" is not tenable. The statement was probably res gestae, but whether so or not, it was an admission of the appellant bearing upon the offense, in connection with other facts rendering it relevant.

Appellant's counsel asked whether there was a preacher at the funeral of Hanson. We fail to perceive the relevancy of this question or its materiality. Appellant says that it was for the purpose of showing that the deceased was a bad man, and that this was inferable from the fact that no preacher appeared at his funeral. As the record stands, the exclusion of the testimony was not harmful.

Being unable to procure counsel, appellant was represented by those appointed by the court. From the record, as well as

the result of the trial, it appears that they performed their duty with commendable care, courage and skill. A careful review of the evidence and the various bills of exception leads us to the conclusion that the appellant has been accorded a legal, fair and impartial trial, that his rights have been fully protected, and that the verdict is but the legitimate consequence of his own act.

The judgment is affirmed.                        *Affirmed.*

### ON MOTION FOR REHEARING.

LATTIMORE, JUDGE.—Appellant has filed a lengthy motion for rehearing but complaint is made of so many things, both of what was said and done by the trial court and trial attorney, as well as what was said by this court, as that we find ourselves with difficulty getting at the exact points contended for.

Appellant's complaint as set out in bill of exceptions No. 2 at the acting of the constable as jury commissioner, presents no facts supporting the complaint. The same thing is true of his proposition in said bill that one of the jury commissioners was not qualified because he had been a member of the grand jury of the county and had served more than one week during the six months next preceding his acting as such jury commissioner. This court cannot consider a complaint in a bill of exceptions that is not supported by some certificate or showing of the truth of such objection.

We are also in trouble trying to understand appellant's motion for a continuance and his complaint in bill of exceptions No. 3. Appellant wanted the case continued because of the absence of one Cole, who was commonly called "Flunky," and was a worker on a section gang. The state controverted the application for continuance and offered therein to admit that if the witness Cole was present he would testify to the facts set up in the application for continuance, but the state contended there had been no diligence. A lengthy showing is made in connection with the state's motion of reasons why there had been no diligence. Without going into same at length, we are of opinion that no diligence was shown. In this connection, however, we note that appellant produced a witness who testified and said that he was commonly known as "Flunky" and that he was working on the section at the time of this killing, on the extra gang. He said his name was Collier. Appellant did not testify nor introduce any witness who claimed to have seen any person named Cole at the scene of the homicide. The refusal of the applica-

tion for continuance was justified. No showing is made in connection with the motion for new trial of any matters which might have reflected upon the soundness of the refusal of the continuance.

Appellant makes quite a complaint at the failure of the court to instruct the jury that the burden was on the state to disprove the exculpatory statements made by the witness Morgan. Reference to the testimony of Morgan shows that the only exculpatory statement made by appellant and testified to by Morgan was brought out in his cross-examination by appellant's counsel. The state did not introduce such exculpatory statement and therefore could in no event be held bound to disprove same.

Being unable to agree with any of the contentions made by appellant, the motion for rehearing will be overruled.

*Overruled.*