Earnest Manuel EDMONSON, Appellant,

v.

The STATE of Texas, Appellee.

No. 37181.

Court of Criminal Appeals of Texas.

Nov. 11, 1964.

Rehearing Denied Dec. 16, 1964.

Malcolm Sanders, Beaumont, for appellant.

W. C. Lindsey, Dist. Atty., Kenneth L. Parker, Asst. Dist. Atty., Beaumont, and Leon B. Douglas, State's Atty., Austin, for the State.

BELCHER, Commissioner.

The conviction is for murder without malice; the punishment, five years.

The testimony of the state reveals that the appellant was visiting his niece, Dorothy, and her sister, Gloria, in Dorothy's side of a duplex; that Ruthie, a sister of Dorothy and Gloria, lived in the other side of the duplex with the deceased. Shortly after the deceased and Ruthie came home around midnight, they heard them talking loudly but not arguing. At this time Dorothy went next door to visit, knocked on the door and called, and the deceased answered "I am coming." While the deceased was coming to the door, the appellant came from the other side, told Dorothy to move aside, kicked the front door open, breaking the latch. When the deceased, with a knife in his hand as appellant approached, asked what he meant by kicking the door open, the appellant said, "Don't hit her anymore, Bug." (Bug was the nickname of deceased). Then the deceased told appellant to get out of his house, and the appellant again said, "Don't hit her anymore, Bug." and the deceased kicked at the appellant as he turned and left the house.

About ten minutes later, the appellant returned with a shotgun in one hand and shells in the other and pushed the door open into deceased's apartment. Gloria grabbed the appellant saying, "Don't do that. You in this * * * in this man's house," and the appellant pushed Gloria and told her not to tell him anything. At this time the deceased, who was standing, walked to the bed, got his pistol and went to the dresser and began loading the gun. When deceased got to the door, between the bedroom and the living room, Ruthie jumped in front of him, and he pushed her aside, and then the appellant shot the deceased with the shotgun. The deceased sat down in a chair, shot the pistol one time, and appellant, still in the front door, had "broken down" the shotgun as if he were trying to "unload it or something." At this time the deceased arose from the chair, shot again, and fell, and the appellant turned around and walked out the door.

The evidence shows that the shot from the gun severed the large iliac artery and vein in deceased's groin thereby causing

loss of blood which resulted in deceased's death.

The appellant testifying in his own behalf, stated that while asleep at Dorothy's duplex, she awakened him saying "Get up and try to help me stop Bugeye (deceased) before he kills Bouncey (Ruthie)". At this time he helped Dorothy to break in the door and he told the deceased not to hit her (Ruthie) anymore. Then the deceased got something from his pocket and said "I will kill both of you", and deceased hit him, and as he turned the deceased kicked him, and he left the house and went home. As appellant arrived home, he heard Ruthie screaming, and decided to get his shotgun to scare the deceased and stop him from whipping Ruthie, but said he did not intend to shoot him. Further, he testified that after returning to deceased's house with the shotgun, that he had to shoot the deceased in self defense as the deceased shot at him with a pistol twice, hitting him in the leg once. Two witnesses testified they were in the neighborhood on the night of the shooting and in their opinion they heard two rifle shots before they heard a shotgun.

In his brief appellant complains of the court's charge on the grounds that it failed to place the necessary burden of proof on the state in charging the presumption on the use of a deadly weapon by the deceased; that such presumption is imperative to both juries and courts; that the court failed to include the provisions of the statute on the presumption on the use of a deadly weapon; and the court also erred in using the words "as you find the facts to be" for the reason it had the effect of relieving the state of its burden of proof in this instruction.

■ The court's charge reveals that it in substance fairly and adequately includes the provisions of Art. 1223, Vernon's Ann.P.C., on the presumption on the use of a deadly weapon. Further, an examination of the charge in the light of the objections that it failed to place the necessary burden of proof on the state, and that it had the effect of relieving the state of its burden of

proof on the presumption on the use of a deadly weapon reveals no error.

■ It is contended that the trial court erred in failing to charge on the defense of another. In the absence of such an objection at the time, to the charge as submitted to the jury, no error is presented.

Appellant contends that the trial court erred in charging the jury upon the law of provoking the difficulty.

■ It is undisputed that appellant intentionally returned to deceased's apartment, and without invitation of the deceased pushed his apartment door open while carrying a loaded shotgun, and when advised by Gloria that he was entering another man's house he told her not to tell him anything. These facts in addition to the prior difficulty and the other evidence as shown by the summary herein of the evidence were sufficient to authorize the court to charge on the law of provoking the difficulty. Tew v. State, Tex.Cr.App., 379 S.W.2d 893.

It is insisted that the trial court erred in submitting a charge upon the rights of the deceased to protect his home from the appellant, and unduly restricted his rights of self defense.

■ In connection with a charge upon the law of self defense, the court further charged that, "Every person has the right to protect his home from unlawful attack by the use of whatever force as may be reasonably required in order so to do. If a person has placed himself in the wrong in the home of another then such wrongdoer is, under the law, bound to yield to and retreat in favor of the lawful rights of the owner of the home present therein at the time of the commission of the wrong."

After properly applying the law to the facts the court also charged: "If you do not find from the evidence beyond a reasonable doubt that defendant was wrongfully in the home of deceased on the occasion in question, or if you have a reasona-

ble doubt thereof, the rights of defendant shall not be lessened hereby and he shall be entitled to his full rights of self-defense as outlined herein."

Under the facts, the complaint made of the foregoing instruction does not reveal error. 29 Tex.Jur.2nd 28, Sec. 46.

■ It is also contended that the trial court erred in refusing to charge the jury on appellant's right to arm himself and seek an explanation from the deceased as to his conduct.

There appears to have been no written objection to the court's charge at the time it was given distinctly specifying the failure of the court to submit a charge on appellant's right to arm himself and seek an explanation from deceased. Such an objection is statutory. Art. 658, Vernon's Ann.C.C.P. No special requested instruction on this matter was presented. Art. 659 C.C.P. This contention reflects no error.

■ Error is urged in the admission of two photographs showing blood on the floor and one of blood on the steps of the apartment where the deceased was killed. The objection was on the ground that there was no issue as to cause of death and that the photographs were inflammatory and prejudicial.

After objection to the qualifications of an experienced officer, who had described the wound, to express his opinion that death was caused by gunshot wound and loss of blood, the state offered the photographs for the purpose of showing the cause of death. At the time appellant stated he would stipulate that death was caused as a result of a gunshot wound but later stated it was withdrawn. Afterwards, a mortician, called by the state, testified that deceased suffered a large wound in the groin, and expressed the opinion that he would lose all of his blood in a short time.

The deceased shot the appellant in the leg in the apartment. The photographs do not show the body. From an examination of the photographs in the light of all the evidence, no reversible error is shown.

■ The evidence is sufficient to sustain the conviction.

The judgment is affirmed.

Opinion approved by the Court.

MORRISON, Judge (dissenting).

I cannot bring myself to agree to an affirmance of this conviction. State's exhibits 8 and 10 show literally acres of blood. Prior to their introduction Officer Lawhon had already testified that he saw the body of deceased in the funeral home, saw the wound and observed the mortician try to extract a sample of blood from the corpse and fail, and had expressed the opinion which was later confirmed by the mortician that cause of death was a gunshot and loss of blood. The pictures therefore helped solve no disputed issue and were highly inflammatory.

I respectfully dissent.