**Luis R. GARCIA, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 49723.

Court of Criminal Appeals of Texas.

April 30, 1975.

------&------

John J. C. O'Shea, Lubbock, for appellant.

Andy Shuval, Dist. Atty., Hereford, Jim D. Vollers, State's Atty., and David S. McAngus, Asst. State's Atty., Austin, for the State.

## OPINION

ONION, Presiding Judge.

This is an appeal from a conviction for the offense of murder with malice. Punishment was assessed by the jury at five (5) years in the Texas Department of Corrections.

In his first ground of error appellant challenges the sufficiency of the evidence to sustain his conviction for the murder of his wife, contending the proof was based solely upon circumstantial evidence.

The record reflects that the appellant's wife, Victoria Garcia, went to Dumas from Lubbock on November 6, 1972, and contacted Cesario Sanchez, requesting that he drive her to her brother's home in Hereford. Sanchez testified that while stopped at a traffic light in Hereford he observed a pickup truck, and the deceased told him not to stop. The appellant, who was driving the pickup, pursued Sanchez and the deceased for a number of blocks until Sanchez turned into Lake Street, which proved to be a dead end street. Sanchez attempted to turn around, but was blocked by the pickup. When the two vehicles stopped, their headlights were facing each other. Sanchez testified that appellant came out of the pickup and started shooting toward the windshield of his (Sanchez's) car.

Sanchez observed a bullet strike the windshield of his car. The deceased started yelling and screaming when the shots were fired, although Sanchez never actually observed her being hit. After the volley of shots began, Sanchez ran away from the cars out into a weeded area. He heard many shots being fired in the first two or three minutes as he ran away. Sanchez returned to the scene after hiding in the weeds for two hours and found the apparently lifeless body of the deceased lying on the ground. A .38 cal. pistol that Sanchez had kept fully loaded under the floormat of his car was found by him lying on the seat of his car, though he had never drawn or shot his gun during the entire incident.

Sanchez found his car had been tampered with, but was able to get it started and drove away, but became lost and found himself in New Mexico. He started his return to Dumas, but ran out of gas and abandoned the car with the gun, and the next day turned himself in to the Dumas Police. The car and the .38 cal. pistol with one spent shell and five bullets were recovered.

Frank Martinez, appellant's son-in-law, testified that he and his wife (appellant's daughter) had accompanied appellant from Lubbock in his search for his wife, the deceased, who had left a 19 month baby at home when she departed. Martinez related that when they encountered Sanchez and the deceased a chase ensued, ending in the dead end street. He testified appellant got out of the truck and started toward Sanchez's vehicle and then returned to the pickup truck and got a weapon and went toward Sanchez's car shooting fast; and that Sanchez and the deceased were not seated far apart inside the vehicle. He stated that neither he nor his wife fired a shot, and he did not see anyone but appellant fire a shot, but later testified he heard a shot before appellant initially fired. He revealed that after Sanchez ran into the weeds the appellant came back to the pickup and got a shotgun and pursued Sanchez. Martinez related he saw the deceased lying on the ground, but was afraid to approach her for fear that the appellant would return and think he was Sanchez.

Officer Neece testified that he showed a .38 cal. pistol to Martinez and he identified such weapon as being similar to the pistol appellant had when he first approached Sanchez's car and began firing, although it was not the same weapon. The weapon used by the appellant was not recovered.

A ballistics expert testified that the bullet taken from the deceased's body was a .38 cal. slug, but it was so mutilated it could not be determined from which weapon it had been fired. The .38 cal. slug found in the ground near the deceased's head was likewise mutilated, and the weapon from which the bullet had been fired could not be ascertained.

Elmer Miller of the F.B.I. laboratory in Washington, D. C., testified as to his expertise in comparing glass particles. He related that he compared the glass particles imbedded in a bullet found near the deceased's head and glass particles taken from the windshield of Sanchez's automobile and that the particles were identical.

Deputy sheriff Burton of Deaf Smith County testified the windshield of Sanchez's vehicle had three bullet-like holes in it and were consistent with an object passing through the windshield from outside the automobile.

The cause of death was attested to by Dr. Jose Diaz Esquivel. A gunshot wound in the head had caused hemorrhaging, which led to the deceased's death. He stated that the bullet had entered in a slightly downward path as it struck her. Dr. Esquivel stated that since there were no powder burns on the deceased, this almost certainly ruled out suicide.

■ The court charged the jury on the law of circumstantial evidence. Viewed in the light most favorable to the verdict, we conclude the evidence is sufficient to support the verdict.

■ Further, we observe that appellant took the stand in the punishment stage for the first time. In response to the prosecutor's question, appellant stated that he was sorry he shot the deceased. Appellant further remarked that he had asked God to forgive him and that he was sorry for what he did. He also asked the jury to forgive him. In Boothe v. State, 474 S. W.2d 219 (Tex.Cr.App.1971), this court held that where the appellant admits in the penalty stage as to his commission of an offense he cannot complain that there is insufficient evidence to sustain the conviction. Similarly, in Richardson v. State, 458 S.W.2d 665 (Tex.Cr.App.1970), we noted that where the appellant did not testify at the hearing on guilt but did so voluntarily at the hearing on punishment admitting his mistake, he cannot on appeal question the sufficiency of the evidence. Consequently, appellant in this case is in no position to complain that the evidence did not prove he shot the deceased.

■ With regard to appellant's contention that malice was not shown, it is well established that malice can be inferred from the use of a deadly weapon. Turner

v. State, 505 S.W.2d 558 (Tex.Cr.App. 1974); 4 Branch's Ann.P.C., 2d ed., Sec. 2189, p. 534. Proof of the intentional shooting of the deceased with a deadly weapon is sufficient to authorize the jury to find malice. Hemphill v. State, 505 S. W.2d 560 (Tex.Cr.App.1974); Newman v. State, 501 S.W.2d 94 (Tex.Cr.App.1973); Taylor v. State, 470 S.W.2d 693 (Tex.Cr. App.1971). We find the evidence sufficient to support a finding of malice.

Appellant's first ground of error is overruled.

■ In his second ground of error appellant complains that the trial court gave instructions on provoking the difficulty which limited his right of self-defense. He contends there was no evidence to support the court's charge of provoking the difficulty, and when the charge was given the court did not apply the law to the facts.

As to appellant's complaint that the charge of provoking the difficulty was not properly applied to the facts of the case, we note that an identical charge was approved by this court in Norwood v. State, 135 Tex.Cr.R. 406, 120 S.W.2d 806 (1938). Compare Porter v. State, 152 Tex.Cr.R. 540, 215 S.W.2d 889 (1948). Appellant's contention is without merit.

The only testimony developed in the trial raising the issue of self-defense was that of appellant's son-in-law, Frank Martinez. It had been uncontroverted from Martinez's and Sanchez's testimony that appellant had chased Sanchez for many blocks, ultimately blocked his path, and immediately alighted from his truck and approached the car of Sanchez and the deceased. Though Martinez stated initially that appellant then returned to his truck, drew his pistol and began firing, he subsequently changed his testimony. Martinez later stated that it was after he had heard a shot and had seen a sparkle from inside Sanchez's vehicle that appellant returned to his truck and began shooting.

Sanchez's testimony sharply conflicted with that of Martinez's as to who fired first. It was stated by Sanchez that when appellant alighted from his pickup truck after blocking Sanchez's path, appellant started shooting toward the windshield of Sanchez's car. There were no shots fired prior to the time appellant began shooting, according to Sanchez.

Viewing the foregoing evidence in the light most favorable to the verdict, we have Sanchez's testimony that no shots were fired before appellant's. The conflicting testimony of Martinez that a shot was fired before appellant began shooting presented an issue for the jury to decide. The jury, as sole trier of the facts, resolved the issue as to when Sanchez may have fired a shot against appellant in exercising their function to accept or reject any or all of the testimony and weight to be given their testimony. Lombardo v. State, 503 S.W.2d 780 (Tex.Cr.App.1974). Hence, in addition to the evidence of appellant's aggressive actions in chasing the deceased, blocking Sanchez's car, and immediately leaving his truck and approaching the car, the jury was authorized to determine that appellant's initial shots provoked the difficulty as well.

■ In every case where the acts and conduct of the accused were the cause of an attack upon him, the issue of whether they were reasonably calculated to provoke the difficulty is a question of fact for the determination of the jury under appropriate instructions from the court. Ervin v. State, 367 S.W.2d 680 (Tex.Cr.App. 1963).

The evidence was sufficient to raise the issue, and the court did not err in charging on provoking the difficulty. Valadez v. State, 408 S.W.2d 109 (Tex.Cr.App.1966); Hall v. State, 402 S.W.2d 752 (Tex.Cr. App.1966); Edmonson v. State, 384 S.W. 2d 702 (Tex.Cr.App.1964); Tew v. State, 379 S.W.2d 893 (Tex.Cr.App.1964).

In appellant's third ground of error he contends that the trial court erred in fail-

ing to grant his motion to exhume the decedent's body and perform a paraffin test. The record reflects that the murder for which appellant was convicted occurred on November 8, 1972, and appellant's counsel began representing appellant that day. Appellant was indicted on December 8, 1972, and the trial began July 17, 1973. It was not until July 13, 1973, that appellant filed his motion to exhume the decedent's body for a paraffin test. In support of appellant's motion, Frank Martinez was called to testify. However, Martinez stated that the first shots fired and heard by him were appellant's. At the time the hearing on the motion was conducted there was no evidence showing any necessity as to exhuming the deceased's body except for a stipulation that Sanchez's gun had been fired once and that all witnesses would deny having fired it.

Appellant's counsel took the stand and stated he had made several oral requests for a paraffin test. However, he admitted that even though he knew no such test had ever been conducted he waited until Friday of the week before trial to file his motion. Counsel stated that he had known for over two months the trial had been set for July 16, 1973. The record similarly reflects no evidence that appellant requested the justice of the peace to disinter the body under Article 49.02, Vernon's Ann.C.C.P.

█ Testimony by the prosecutor revealed that the body had been washed before burial. The only testimony that a paraffin test could successfully be administered as late as eight (8) months after burial was by appellant's counsel, who said soap and water would not remove the evidence. However, appellant's counsel stated that he was not a qualified chemist. Before the statement of opinion of a witness in regard to any fact in issue is admissible,

he must be competent and qualified to testify. Hopkins v. State, 480 S.W.2d 212, 218 (Tex.Cr.App.1972). Nowhere was competent evidence given during the hearing either to show the necessity of such an examination or to show that such a delayed examination would be effective. Though the court advised appellant that scientific expert testimony would be necessary to show that the delayed paraffin test would be effective in proving anything, appellant did not come forward with such evidence.

This court has had an occasion to address the question as to whether paraffin tests are even admissible into evidence. Though most of the opinion dealt with the issue of whether the performance of such a test violated the appellant's right against self-incrimination, we held such evidence admissible in Henson v. State, 159 Tex.Cr. R. 647, 266 S.W.2d 864 (1954). Since that time various treatises have condemned such evidence and some jurisdictions have held the test inadmissible as evidence.[1]

However, under the circumstances of this case, we need not address ourselves to whether the evidence would or would not have been admissible. Crucial to our determination is appellant's lack of diligence in filing his motion to exhume the deceased's body. Though appellant cites Gray v. State, 55 Tex.Cr.R. 90, 114 S.W. 635 (1908), where an appellant waited five months to file his motion to exhume a body, the facts here are substantially different. In *Gray* the appellant requested such motion to determine the placement of the bullets in the body of the deceased to see if the deceased had been shot in the back or front. This would have gone to appellant's issue of self-defense, as would have information as to how many bullets were found inside the body. Such infor-

1. Born v. State, 397 P.2d 924 (Okl.Cr.App. 1964) ; Brooke v. People, 139 Colo. 388, 339 P.2d 993, 1959) ; Clarke v. State, 218 Tenn. 259, 402 S.W.2d 863 (1966) ; International Criminal Police Review, January 1964, p. 28; Turkel & Lipman, "Unreliability of Dermal Nitrate Test for Gunpowder (Sic)," 46 J.Crim.L.C. & P.S. 281 (1955) ; Cowan, "A Study of the 'Paraffin Test,'" 12 J. for Sci. 19 (1967) ; Scientific Evidence in Criminal Cases, pp. 157–159 (1973).

mation would have been readily available from a delayed examination of the body.

In the present case, though, the trial court desired scientific expert testimony that such "paraffin test" would prove anything at the late date of the trial, and appellant declined to offer any competent evidence to that effect. An analogous situation was presented in Montes v. State, 503 S.W.2d 241 (Tex.Cr.App.1974). In *Montes* we held that where no benefit could be shown from the examination and testing of narcotic paraphernalia, no error would result from the denial of such an examination. Thus, we have no evidence before us to conclude that such information from a "paraffin test" would have been helpful in the determination of appellant's issue of self-defense. Gutierrez v. State, 502 S.W. 2d 746 (Tex.Cr.App.1973).

▮ Denial of the exhuming of a body is not error unless it can be shown that such examination will tend to solve any important or material issue in the case. Johnson v. State, 106 Tex.Cr.R. 482, 293 S.W. 173 (1927). Further, the exhuming should not be allowed in any case unless it was imperatively demanded under the circumstances and was necessary for the due administration of justice. Shields v. State, 89 Tex.Cr.R. 421, 231 S.W. 779 (1921). As appellant has failed to reveal any evidence that the "paraffin test" would benefit him when conducted over eight (8) months after burial, his third ground of error is overruled.

In appellant's fifth ground of error he complains that the trial court coerced the jury into arriving at a final verdict. In support of his argument appellant states that the jury sent a note to the court after three hours and forty minutes of deliberation on punishment, stating that they could not reach a unanimous verdict. Also, appellant states that the jury foreman stated in open court at that time that the jury was "about hopelessly deadlocked."

The record reflects that the jury deliberated on the guilt stage of the trial for eight and one-half hours before reaching a verdict at 10 p. m. This deliberation began after two and one-half days of trial. When they returned their verdict of guilt, they then returned to deliberate on punishment until 1:40 a. m. The jury had expressed their desire to continue deliberations despite the court stating that they could recess. At 1:40 a. m. the foreman mentioned the issue of their being unable to reach a verdict. After ascertaining that the vote was 11 to 1, the court asked the jury to retire again and see if further deliberations later on that day (July 20, 1973) would "help resolve the matter or not." The jury sent back a note to the court stating that there was a possibility of reaching a decision and asking to be recessed until 1 p. m. After returning to court around 1 p. m., the jury deliberated another hour before assessing appellant's punishment at five (5) years. The total time for deliberation on punishment was four hours and forty minutes.

▮ The length of time that the jury may be held for deliberation rests largely in the discretion of the court, and unless it is made to appear that the court abused its discretion in this regard, no reversible error is shown. Williams v. State, 476 S.W. 2d 300 (Tex.Cr.App.1971). See Article 36.31, Vernon's Ann.C.C.P.

▮ A similar situation was presented in Potter v. State, 481 S.W.2d 101 (Tex. Cr.App.1972). In *Potter* after the jury had sent two notes to the court stating that they were unable to reach a verdict, the court instructed the jury to endeavor to reach a verdict. The jury returned with a verdict in the same approximate time of five hours as in the present case. We held that under such circumstances no undue coercion on the part of the trial court had been shown. Likewise in this case we feel that no coercion has been shown by appellant in the less than five-hour deliberation. This is especially true in view of the jury's own determination that they felt there was a possibility of reaching a verdict. The

remarks of the trial court addressed to the jury cannot be seen as coercive. See Holman v. State, 474 S.W.2d 247 (Tex.Cr. App.1971); Chafer v. State, 500 S.W.2d 139 (Tex.Cr.App.1973).

Appellant's fifth ground of error is overruled.

In his fourth ground of error appellant contends the court erred in failing to provide a court reporter upon request when the court gave instructions to the jury concerning their deliberations upon their return at 1 p. m. on July 20, 1973, which were followed by his motions made in absence of the jury upon which the court ruled, and that no reporter was present when the verdict at the punishment stage was returned and the jury was polled, at which time he made other motions and objections upon which the court ruled.

We find no timely presented objection in writing to the absence of the court reporter.

The only manner in which the appellant has sought to support this ground of error is by a purported bystander's bill of exception filed one year and two days after notice of appeal was given. Article 40.09, Sec. 6, Vernon's Ann.C.C.P., provides for the filing of formal bills of exception, including bystander's bills. The statute provides that bills of exception must be filed with the clerk and presented to the trial judge within ninety (90) days after notice of appeal is given unless for good cause shown an extension of time is granted by the court. By virtue of the Act, the filing of a formal bill of exception and a qualification of the bill are clearly a predicate for the filing of a bystander's bill of exception. The statute provides that the bystander's bill of exception may be filed not later than fifteen (15) days after receipt of notice from the clerk that the court has refused or qualified the bill of exception.

This predicate is not found in the record. There were no formal bills of exception filed within the ninety (90) day time, nor were there any extensions of time granted. In fact, there were no bills of exception filed.

Appellant, it appears, merely filed the so-called bystander's bill. Such so-called bystander's bill presents nothing for review by this court.

It is observed that the trial judge responded and filed findings of fact in which he stated that appellant did not object when he addressed the jury, and that all he said was, "Good afternoon, ladies and gentlemen of the jury, are you ready to deliberate? You may retire."

Even if the bill was properly before this court, we could not conclude that the remarks attributed to the trial court, when no court reporter was present, were coercive or would present reversible error.

While every effort should be made to have the court reporter present at all times during a trial, we cannot conclude that appellant's fourth ground of error has merit. It is overruled.[2]

In appellant's final ground of error he claims that the indictment is fatally defective in that it was not returned by a properly constituted grand jury. In support of his claim appellant states that there was no written order of appointment made as to the grand jury which returned the indictment of appellant.

Lola Veazy, who was the district clerk of Deaf Smith County, testified that she was in office at the time of the appointment of the jury commissioners for July, 1972. She stated that there was no written order of appointment for the five commissioners who selected the grand jury. However, Veazy did say that she put the names of the jury commissioners in a jury

---

2. A court reporter should always be present when the judge is on the bench.

timebook after the district judge picked them in the courtroom. She stated that she was present while the district judge picked the commissioners.

Judge Archie McDonald stated that he followed his regular practice by verbally appointing the five (5) jury commissioners. It was related by Judge McDonald that based on the record he knew he appointed the jury commissioners and he gave them their oath. He also stated that he asked them the necessary questions regarding qualifications as set forth in Article 19.01, Vernon's Ann.C.C.P.

Appellant contends that Article 19.01, supra, requires an order appointing grand jury commissioners. This court has previously held that the forerunner to this statute, Article 333, Vernon's Ann.C.C.P., does not require the entry of an order appointing jury commissioners, and that its provisions are directory and not mandatory. Ex parte Soliz, 159 Tex.Cr.R. 273, 262 S.W.2d 502 (1953).

 Veazy's testimony that the district judge appointed the commissioners for the July, 1972, term is sufficient to show as to what term the commissioners were to serve. Further, the court's acknowledgement that based on the record he appointed the commissioners is sufficient to show such appointment. We find *Soliz* controlling for the principle that the provisions of the present Article 19.01, supra, are directory and not mandatory. The best practice is, of course, to enter a written order, then questions such as this could be eliminated.

■ Appellant also contends that the grand jury commissioners were not from different portions of the county as required by Article 19.01, Sec. 4, Vernon's Ann.C.C.P. Lola Veazy, the district clerk, testified that four of the five commissioners lived in Hereford. However, she stated that of the 18,900 people in the county, 13,900 lived in the City of Hereford.

We have held that this identical provision of the former statute, Article 333,

Vernon's Ann.C.C.P., that grand jurors be selected from different portions of the county, is directory and not mandatory. Jones v. State, 153 Tex.Cr.R. 276, 219 S. W.2d 463 (1949). Further, there was testimony by the district clerk that one juror lived in the northeast, two in the northwest, and one in the center of Hereford. We feel that there was sufficient compliance in the statute and the trial court properly overruled appellant's motion. Buchanan v. State, 1107 Tex.Cr.R. 559, 298 · S.W. 569 (1927).

The judgment of the trial court is affirmed.