Sandra JONES, Appellant,

v.

The STATE of Texas, Appellee.

No. 3–82–355–CR(T).

Court of Appeals of Texas,
Austin.

Nov. 16, 1983.
Rehearing Denied Dec. 14, 1983.

Roy E. Greenwood, Austin, for appellant.

Jeffrey L. Van Horn, Criminal Dist. Atty., Lockhart, Roy Q. Minton, Minton, Burton, Foster & Collins, Austin, for appellee.

Before PHILLIPS, C.J., and POWERS and GAMMAGE, JJ.

PHILLIPS, Chief Justice.

Sandra Jones appeals the trial court's judgment, based upon the jury's verdict, finding appellant guilty of murder,[1] and sentencing her to twenty-five years in the Texas Department of Corrections.

Appellant challenges the trial court's judgment in that (1) the evidence is insufficient, and (2) the trial court erred in allowing the State to introduce evidence of a polygraph examination given to appellant. We do not reach the other grounds of error raised by appellant since we find reversible error accompanied by sufficient evidence. We thus reverse and remand.

The deceased, David Johnson, was found dead on the morning of Saturday, July 7, 1979, lying face down in a roadside ditch outside of Luling, Texas, with a fatal gunshot wound to his head. His front pockets had been turned inside out, although $31 and his wrist watch were found still on his person. Spent six-millimeter rifle shells, assorted cigarette butts, an empty cigarette package, a blue butane lighter, an empty whiskey bottle in a sack, a shot-up beer can, and a six-millimeter rifle leaning against a fence post were discovered near the body; a bloody towel smeared with the same blood type as the deceased's was found one and one-half miles from the scene. The local authorities also discovered small holes in the roadway where it appeared the deceased's body had been dragged. Later that same day, the deceased's pick-up truck was discovered parked in Luling approximately 200 yards from appellant's mother's home. A visual inspection of the pickup truck revealed blood on the driver's side door, the driver's seat, and the back bed of the vehicle. The inspection also revealed a bullet crease on the front hood of the pick-up truck.

Upon further investigation, the local authorities discovered that the deceased had been in frequent company with the appellant the days preceding his death. The record shows that appellant, originally from Chicago, was in Luling visiting her mother and brother. She was seen with the deceased two nights before his murder at a local bar in Luling. On Friday, July 6, 1979, appellant, her brother, and the deceased spent the morning driving around the area drinking beer. That afternoon, appellant and her brother accompanied the deceased to a local bank where he cashed $600 in checks, which money he kept on his person. They then spent the afternoon at the Luling auction. Sometime around suppertime, the deceased and appellant dropped appellant's brother off at appellant's mother's home. The deceased and appellant were then seen shortly thereafter at a grocery store in Luling and a short

1. Texas Pen. Code Ann. § 19.02(a)(1) (1974) states:
   (a) A person commits an offense if he:

(1) intentionally or knowingly causes the death of an individual.

period later at a friend's home. Shortly thereafter they were seen at another friend's home where the deceased paid the friend $20 for catching a bull the deceased had recently purchased. The last time they were seen together was in the early evening of Friday, July 6, 1979.

At around 10:00 p.m. on this Friday night, the deceased was last seen alive. He had returned home to pick up his rifle so that he could "go hunting." His father saw an unidentified person in the truck with him as the pick-up truck drove off. A few hours later, a little after midnight early Saturday morning, the deceased's pick-up truck was seen parked on private property approximately 200 yards from appellant's mother's home in Luling. A cursory inspection of the pick-up truck by a relative of the landowner revealed that the truck was empty and that the doors were locked. At approximately this same time, appellant returned to her mother's home quite upset with a dark stain on the front of her blouse. She then proceeded to have a discussion with her brother. The next morning, shortly before the deceased's body was found, the deceased's pick-up truck was again observed parked 200 yards from appellant's mother's home. Later that day, appellant flew home to Chicago.

The record shows that the deceased died as a result of a gunshot wound to his head fired from a six millimeter rifle at least 15–18 inches from his head, sometime between 10:00 p.m. Friday and early Saturday morning. The State's ballistics expert testified that he could not positively state that the six-millimeter rifle, found near the deceased's body, was the murder weapon because the rifle slug had shattered into too small of pieces, upon entering the deceased's skull, for an accurate examination. He did testify that it was similar to the weapon that was employed in murdering the deceased. A fingerprint expert, called by the State, testified that he found appellant's fingerprints in the truck on the driver's side inside door panel above the maintenance sticker, among other places within the truck's interior.

At the close of the State's case, appellant moved the trial court to grant an instructed verdict citing that the State had produced insufficient evidence to convict her of the charged crime. The trial court refused.

During the punishment phase of the trial, appellant testified that she was twenty-six years old, married, the mother of six children, and normally, a resident of Chicago. She stated that she had journeyed to Luling to visit her mother and that she normally stayed two weeks while she visited relatives there. She further testified that she had had sexual intercourse with the deceased at his insistence the Friday night of his murder. Appellant testified that the deceased had physically forced her to comply with his demands. She further told how she had escaped from the farm house where he had attacked her and had then run up the dirt road. The deceased then followed in his pick-up truck, apologized to appellant for struggling with her, and talked her back into the pick-up truck.

Appellant further testified that the deceased had then stopped the pick-up truck and started to shoot at a beer can which was lying in the road. He then returned to the truck and placed the rifle in the rear of the truck where appellant was seated. Appellant then picked up the rifle, pointed it at the deceased, and demanded that he take her home. She testified that the deceased then "grabbed the gun and it went off." She denied having intentionally shot him. She got out of the truck, dragged his body across the dirt roadway to the ditch—wearing her high heel shoes—and drove home, parking the deceased's pick-up truck approximately 200 yards from her mother's home. Appellant further testified that when she returned home she did have blood on her blouse and that she did have a discussion with her brother.

At this punishment phase of the trial, the Sheriff testified that appellant had initially told the authorities that the deceased had been shot by two black males, his body dragged into the ditch, and his pockets gone through while they had been driving in the country. He further testified that

appellant had changed her version of the events several times throughout his investigation of the murder. Appellant had during cross-examination confirmed that she told such a story, but insisted that it was a fabrication.

Appellant contends that "the trial court erred in admitting the results of a polygraph examination made of appellant ... to generally impeach the truthfulness and veracity of the appellant."

Upon examination of the record, we find that during the punishment phase of the trial, appellant, upon being cross-examined by the special prosecutor, admitted taking a polygraph exam and having lied in response to several of the questions. Sheriff Reed was then recalled and testified as to the substance of the polygraph exam and the results of the test. Over objection, Sheriff Reed testified that the polygraph examiner had indicated to him that appellant was lying in denying her part in the murder.

■■■ Even in the absence of objections, the trial court should not have allowed the evidence regarding the polygraph exam before the jury. The results of a polygraph examination are never admissible in court to establish any matter. *Crawford v. State*, 617 S.W.2d 925 (Tex.Cr.App.1980). Despite the State's contentions, appellant did not waive her right to complain of this reversible error by her answering of the State's improper questions. Nor did appellant waive her right to complain of this reversible error by her admissions in the punishment stage. The State cites no authority supporting this theory of waiver. We hold that there was no waiver. This is especially true under these facts, since the polygraph issue was used to implicity impeach appellant's accident defense.

Since appellant challenges the sufficiency of the evidence, we must resolve the issue to determine the disposition of this case. *Hooker v. State*, 621 S.W.2d 597 (Tex.Cr.App.1980). Appellant alleges that

the trial court should have granted appellant's motion for an instructed verdict. We overrule this ground of error.

We initially note that as of the time appellant moved for a directed verdict, the evidence was insufficient to support the judgment. The only evidence tying appellant to the murder at that point was that she had been seen in the victim's company as of the Friday before his body was discovered on Saturday, that there was a spot on her blouse that Friday, that two cigarette butts of the type appellant smoked were found near the body, that appellant was wearing shoes (high heels) that could account for the holes in the road near the body, and that appellant's truck was found parked about 200 yards from appellant's mother's house.

■■■ Appellant contends that this Court cannot consider appellant's punishment-stage testimony in assessing the sufficiency of the evidence. However, evidence from the punishment stage is considered along with the testimony given in the guilt-innocence stage for the purpose of testing the sufficiency of the evidence. *Daughtrey v. State*, 544 S.W.2d 158 (Tex. Cr.App.1976). This rule is applicable to those individual elements of the offense admitted by the defendant; the defendant need not admit all elements of the offense for the rule to apply. *Daughtrey v. State, supra; Cf. Smyth v. State*, 634 S.W.2d 721 (Tex.Cr.App.1982); *Garcia v. State*, 522 S.W.2d 203 (Tex.Cr.App.1975).

■■■ Appellant does not contend that the evidence, when her own testimony is considered, is insufficient to support the judgment. She argues only that this Court may not consider her testimony. Here, in the punishment stage appellant testified on direct examination that she was present when the victim was shot, that she pointed the rifle at the victim, that the rifle discharged and that she pulled the body away from the truck.[2] She did not report what had occurred; instead, she left town.

---

**2.** The State is not bound by the exculpatory portion of appellant's statement, since the statement was offered by appellant. *Smith v. State*, 491 S.W.2d 924 (Tex.Cr.App.1973).

There was testimony that the deceased, had $600 on his person the day he was shot, and that he was found with $31 and with his pockets pulled out. Appellant admitted giving at least one false version of what had occurred at the scene of the shooting. We note also that appellant's version of how the gun went off was impeached by her prior inconsistent statement. Use of this statement is challenged in a separate ground of error. However, any such error was waived by appellant's failure to object at trial. *Crawford v. State,* 617 S.W.2d 925 (Tex.Cr.App.1980.)

█ Having reviewed the evidence, we conclude that any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Carlsen v. State,* 654 S.W.2d 444 (Tex.Cr. App.1983) (opinion on State's motion for rehearing).

Reversed and Remanded.

GAMMAGE, Justice, concurring in part and dissenting in part.

I concur in the reversal of this conviction, but I must respectfully dissent from the decision of the majority to remand the cause for a new trial.

Appellant's testimony at the punishment stage of her trial—that she was forcibly raped twice by an assailant who, after an attempted third rape, in response to her pleas to be taken home, explained that she would also have to "take care of" his friends, and who grabbed the barrel of the rifle held by appellant whereupon it discharged and killed him—is clearly *not* a judicial confession to murder, the offense for which the jury was charged and the verdict was returned.

The majority correctly notes that, at the time appellant moved for a directed verdict, the evidence was insufficient to support a conviction. However, the majority goes on to hold that *any* evidence from the punishment stage of the trial may be read-back and considered along with that admitted in the guilt-innocence stage for the purpose of testing the sufficiency of the evidence. I believe such an interpretation of the "read-back rule" to be incorrect. It purports to allow such evidence to include statements amounting to less than a judicial confession—an admission of the essential elements of the offense for which a verdict of guilty has been returned.

At the guilt-innocence stage, this case involved only circumstantial evidence which was clearly insufficient to support the conviction of appellant for murder or any other crime. After the trial court erroneously overruled appellant's motion for a directed verdict, and after the jury was erroneously allowed to render its guilty verdict, appellant testified during the punishment stage to the circumstances surrounding the death of the deceased. At no time did appellant admit the *act* of firing the rifle or that she *intentionally or knowingly* caused the death of the deceased. These elements are essential to constitute a judicial confession to the offense of murder. We may not presume their presence to defeat the presumption of appellant's innocence, nor may we infer them to convert appellant's exculpatory statement into a judicial confession. *See Harrell v. State,* 659 S.W.2d 825 (Tex. Cr.App.1983).

In *Daughtrey v. State,* 544 S.W.2d 158 (Tex.Cr.App.1976), relied upon by the majority, the Court of Criminal Appeals *declined* to pass on the question of sufficiency of the evidence because it had an inadequate record before it. While the Court in dictum at one point recited the read-back rule in the language used by the majority in the instant case, in stating the rationale for the rule at another point in the same paragraph it impliedly restricted its use to situations involving only judicial confessions.[1]

---

1. "Further, this court has held that where a defendant challenges the sufficiency of the evidence to sustain a conviction, *evidence from the punishment stage, including a judicial confession by the defendant, is to be considered in deciding*

the question.... As stated in [*Boothe v. State,* 474 S.W.2d 219 (Tex.Cr.App.1971)] at p. 221: 'It would be an exercise in futility to reverse such a case for insufficient evidence [at the guilt stage of trial] where the testimony of the appellant

In *Smyth v. State,* 634 S.W.2d 721 (Tex. Cr.App.1982), also relied upon by the majority, the Court of Criminal Appeals specifically *declined* to allow the accused's admission of *one* element of the offense at the punishment stage to be used to cure the trial court's error of admitting objectionable testimony of another, and otherwise unproven, element of the offense during the guilt-innocence stage of the trial.

Finally, in *Garcia v. State,* 522 S.W.2d 203 (Tex.Cr.App.1975), the accused took the stand at the punishment stage of his trial, *admitted he shot* the deceased and asked for forgiveness. The Court of Criminal Appeals held that, because of this *admission* during the punishment stage, the accused could not complain that the evidence

[*judicial confession* at the penalty stage of trial] could be used against him on a retrial.'" [emphasis added; brackets in original]

2. *See* for example:
*Wheeler v. State,* 628 S.W.2d 800 (Tex.Cr.App. 1982) (Accused pleaded guilty and admitted possession of heroin "as charged," thereby waiving question of legality of search.)
*Brown v. State,* 617 S.W.2d 196 (Tex.Cr.App. 1981) (Accused did not testify at all, but case sets out principle that if accused does testify he *may* waive his rights.)
*Lasker v. State,* 573 S.W.2d 539 (Tex.Cr.App. 1978) (Accused "admitted all the elements of the offense," and could not then challenge sufficiency of the evidence.)
*Bodde v. State,* 568 S.W.2d 344 (Tex.Cr.App. 1978) (Not in point, but accused argued it was a denial of due process to not permit him to admit guilt without waiving claimed error. Court said it was common sense and not a denial of due process.)
*Dugger v. State,* 543 S.W.2d 374 (Tex.Cr.App. 1976) (Accused confessed murder, thereby waiving sufficiency of evidence.)
*Jones v. State,* 532 S.W.2d 596 (Tex.Cr.App.1976) (Accused took stand at punishment phase in support of motion for probation and made "judicial confession" of burglary of a building.)
*Hunnicutt v. State,* 531 S.W.2d 618 (Tex.Cr.App. 1976) (Accused admitted guilt to "offense charged," thereby waiving objection to search.)
*Jones v. State,* 518 S.W.2d 245 (Tex.Cr.App.1975) (Accused admitted guilt "of the allegations in the indictment," thereby waiving sufficiency of the evidence.)
*Downey v. State,* 505 S.W.2d 907 (Tex.Cr.App. 1974) (Accused admitted possession of marihuana, thereby waiving legality of search.)
*Sims v. State,* 502 S.W.2d 730 (Tex.Cr.App.1973) (Accused admitted possessing capsule contain-

at the guilt-innocence stage did not prove he shot the deceased.

In all the cases I have examined applying the read-back rule (or related cases dealing with statements of the accused which resulted in waivers to evidentiary objections), the involved statements included admissions to necessary elements of the offense for which the accused stood convicted.[2]

In the instant case, however, while we have clearly insufficient evidence at the guilt-innocence stage to sustain a conviction for murder, we do *not* have a judicial confession at the punishment stage which may be read-back to overcome this deficiency. Furthermore, even were appellant's statement in this case sufficient to consti-

ing heroin, could not then contest legality of search.)
*Rozell v. State,* 502 S.W.2d 16 (Tex.Cr.App.1973) (Accused testified he was guilty at punishment stage, granting of new trial to get co-defendant's testimony would serve no purpose.)
*Creel v. State,* 493 S.W.2d 814 (Tex.Cr.App.1973) (Accused took stand to "explain away" items in vehicle, admitted they were there, thus waiving probable cause objection to search.)
*Brown v. State,* 487 S.W.2d 86 (Tex.Cr.App.1972) (Accused pleaded guilty and testified as to extraneous offense, thereby waiving objection to State's witness testifying to same.)
*McKenzie v. State,* 487 S.W.2d 65 (Tex.Cr.App. 1972) (Accused made judicial confession, thereby waiving objection to tainted identification.)
*Sheridan v. State,* 485 S.W.2d 920 (Tex.Cr.App. 1972) (Accused admitted possessing marihuana, thereby waiving probable cause objection to search.)
*Evans v. State,* 480 S.W.2d 387 (Tex.Cr.App. 1972) (Accused took stand at guilt stage and admitted shooting his wife, could not then object to admissibility of statement of a witness as to accused's earlier admission of same at scene.)
*Chaney v. State,* 477 S.W.2d 580 (Tex.Cr.App. 1972) (Accused judicially confessed to possession of heroin, thereby waiving objection to legality of search.)
*Palmer v. State,* 475 S.W.2d 797 (Tex.Cr.App. 1972) (Accused admitted possessing heroin, cannot question lawfulness of search.)
*Boothe v. State,* 474 S.W.2d 219 (Tex.Cr.App. 1971) (Accused at punishment stage, admitted possession of marihuana, thereby waiving sufficiency of evidence.)
*Richardson v. State,* 458 S.W.2d 665 (Tex.Cr. App.1970) (Accused admitted guilt and asked for mercy, thereby waiving sufficiency.)

tute a judicial confession, I believe the rationale for the read-back rule—to allow the statement's use in testing sufficiency of the evidence in order to avoid a further trial—no longer has valid application.

This rationale was adopted prior to the decisions of the United States Supreme Court in *Burks v. United States*, 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978); and *Greene v. Massey*, 437 U.S. 19, 98 S.Ct. 2151, 57 L.Ed.2d 15 (1978), wherein it was held the double jeopardy clause of the Fifth Amendment precluded a second trial where the first conviction is reversed solely on the basis of insufficient evidence to sustain the jury's verdict.

Since retrial is no longer possible in cases reversed for insufficient evidence, and since the rationale behind the read-back rule was that such retrials should be avoided because the inculpatory testimony of an accused at the punishment stage would only be used to provide sufficient evidence to sustain a guilty verdict at retrial, the basis for the read-back rule in cases involving insufficient evidence no longer exists.

As Presiding Judge Onion stated in the dissenting portion of his opinion in *Gordon v. State*, 651 S.W.2d 793 (Tex.Cr.App.1983), the decisions relied upon by the majority in the instant case

> dealt with the sufficiency of the evidence, where defendant had *admitted guilt* only at the penalty stage of the trial, and reversal for lack of sufficient evidence would mean use of his testimony at any retrial. These cases may well be questioned in light of [*Burks* and *Greene*], *particularly if a motion for instructed verdict is erroneously overruled at the guilt stage of the trial.* [emphasis added]

*Gordon* at 797.

In the case before us we have just such a situation where a motion for instructed verdict was erroneously overruled. In the majority's view, this error was waived because appellant took the stand at the punishment stage and made a statement which was even *less* than an admission of guilt.

I disagree. The judgment should be reversed and an acquittal ordered.