Charles SPARKS, Appellant,

v.

The STATE of Texas, Appellee.

No. 3–90–207–CR.

Court of Appeals of Texas,
Austin.

Nov. 27, 1991.

Bill Barbisch, Austin, for appellant.

Ronald Earle, Dist. Atty., William G. Reid, Asst. Dist. Atty., Austin, for appellee.

Before CARROLL, C.J., and ABOUSSIE and KIDD, JJ.

ABOUSSIE, Justice.

A jury found appellant guilty of burglary of a habitation. Tex.Penal Code Ann. § 30.02 (1989). The trial court assessed punishment at thirty-five years' confinement in the Texas Department of Criminal Justice Institutional Division.

In a single point of error, appellant asserts that the trial court erred in denying his motion for a mistrial following the State's improper introduction of testimonial evidence concerning its witness's agreement to take a polygraph test. We will reverse the judgment of the trial court.

## I. BACKGROUND

At approximately 8:00 a.m. on Sunday morning, December 17, 1989, an apartment shared by Terence Schumpert and Joe Cunningham was burglarized. Schumpert discovered and confronted the burglar, who fled. Schumpert was able to get a description of the burglar and the license number of the truck as he drove away. Cunningham's wallet was stolen in the burglary.

At 9:16 a.m., appellant called the police to report his truck stolen. He told investigating officers that he believed one Daryl Green had stolen his truck, because Green had come to his apartment earlier that morning[1] to use the telephone, and would have had access to his truck keys, which were on the coffee table at the time. Appellant did not discover the truck was missing until he prepared to go to work at approximately 9:00 a.m. The description of Green that appellant gave police matched several characteristics in the description of the burglar that Schumpert had given police. Later that evening, appellant called the police a second time, to report that he saw Green return his truck. The police launched an immediate search of the vicinity looking for a man fitting the description appellant had given them. They detained a man who identified himself as Devon Poe. Appellant identified Poe as the man who had stolen his truck. Poe was arrested and taken to the police station. His picture was included in a photo spread and Schumpert was asked if he could identify the burglar. He could not. Shortly thereafter, the investigating officer prepared a second photo spread, and called Schumpert back to the police station to view it. This second photo spread included a picture of appellant. Schumpert positively identified appel-

---

1. On direct examination, Officer Boles, who took appellant's statement that morning, testified that appellant told him that Green came to his apartment at 2:00 a.m. However, on cross-examination, Boles testified that his offense report indicated appellant told him Green had come by to use the phone at 7:30 a.m. Boles was uncertain whether the time reflected in the offense report was a typographical error. Regardless of which hour is correct, the truck theft occurred prior to the burglary later that morning.

lant as the man he had seen in his apartment.

The trial of this cause began August 21, 1990. It was the State's theory that appellant, realizing he and his truck had been seen by Schumpert, called the police and fabricated the truck-theft story in an effort to throw suspicion away from himself, going so far as to falsely accuse Poe. The evidence most strongly supporting the State's theory included: (1) Schumpert's photo identification and in-court identification of appellant as the intruder he discovered in his apartment; (2) Schumpert's testimony that he provided to the police a description and license number of the truck used by the burglar to flee; and (3) Police Officer Robertson's testimony that a computer search of the license number Schumpert provided showed that the truck was registered to appellant.

Regarding Schumpert's identification of appellant, the defense, on cross-examination of Schumpert, elicited his testimony that there was only ambient light in the apartment at the time of the burglary and it was "not as bright as if it were well lit." Schumpert also testified that he confronted the burglar only ten to fifteen seconds. Defense counsel also pointed out inconsistencies in Schumpert's description of the suspect's facial hair. Schumpert testified that he had told police on the date of the burglary that the suspect had a goatee or mustache. The description in Officer Robertson's police report includes the notation that the burglar had a beard. Yet, Schumpert testified that in a telephone conversation with appellant's counsel, he described the burglar only as needing to shave.[2]

Appellant called two alibi witnesses, Tammy McDonald and Lashonda Favors. McDonald, who was scheduled to marry appellant within days of trial, testified she telephoned appellant at his apartment and talked to him at approximately 8:20 a.m. on December 17, 1989, a time that coincides with the time that the burglary occurred. Favors, on the other hand, testified that she was with appellant in his apartment the entire morning of the burglary and that neither of them left the apartment, although she never told police this information before testifying in court. Favors, however, did not hear the phone ring in the apartment or hear appellant talk to anyone other than the police on the morning of the burglary. She also testified that appellant was clean shaven on December 16, the day before the burglary.

The State and the defense closed their respective presentations of the evidence on August 22, 1990. On August 23, over appellant's objection, the State was allowed to re-open its evidence in order to call as a rebuttal witness, Devon Poe.[3] He testified as to his activities on the day of the burglary and denied that he stole the truck or committed the burglary. After further testimony regarding in-custody questioning by one Sergeant Oliver, the following exchange occurred:

PROSECUTOR: Did you explain to Sergeant Oliver what you had done on Sunday, December 17?

Poe: Yes.

PROSECUTOR: Did you give him information on names and phone numbers of your aunt and uncle? [4]

Poe: Yes.

PROSECUTOR: Did you ever agree to take a polygraph test—

MR. GRIZZARD [Defense Attorney]: Judge, objection.

Poe:—Yes

GRIZZARD: Judge, a polygraph—

THE COURT: Ladies and gentlemen of the jury, you're not to consider the last question or answer for any reason.

MR. GRIZZARD: I move for a mistrial.

THE COURT: Request denied.

---

**2.** Appellant's description of "Green" had included a beard. In December, 1989, Poe had facial hair on his chin.

**3.** Poe had been subpoenaed, but was ill on the day of his scheduled testimony.

**4.** At the time of the offense, Poe lived with his aunt and uncle, who presumably could have confirmed portions of his account of what he had done that day.

## DISCUSSION

 Because of its inherent unreliability, and its tendency to be unduly persuasive, the results of a polygraph examination are not admissible in Texas for any purpose. *Nethery v. State*, 692 S.W.2d 686, 700 (Tex.Crim.App.1985), *cert. denied*, 474 U.S. 1110, 106 S.Ct. 897, 88 L.Ed.2d 931 (1986); *Stewart v. State*, 705 S.W.2d 232, 234 (Tex.App.1986, pet. ref'd). The results of a polygraph test may be disclosed not only by an affirmative statement of a witness, but merely by a question revealing that a polygraph examination has been administered. *Nichols v. State*, 378 S.W.2d 335, 337 (Tex.Crim.App.1964).

The State concedes the question, "Did you agree to take a polygraph test," was improper and the answer inadmissible. Nevertheless, the State argues that the inquiry only established that Poe had *agreed to take* a test. No results were disclosed, nor was it even established that Poe had taken a polygraph examination. Therefore, the State argues, the instruction was sufficient to cure the error without the necessity of a new trial.

 The State relies on cases cited in *Banda v. State*, 727 S.W.2d 679 (Tex.App. 1987, no pet.), as support for the proposition that where the lie detector evidence is only mentioned, and the results are not disclosed, an instruction to disregard is sufficient. In *Banda*, this Court observed that:

> Where the defense insists on a mistrial, the sufficiency of an instruction to disregard polygraph evidence generally depends on whether the results of the exam were revealed to the jury. In all cases we found where an instruction to disregard was held sufficient, lie detector evidence was only mentioned and no results were disclosed. *See e.g. Reed v. State*, 522 S.W.2d 466 (Tex.Cr.App.1975) (testimony that witness was a polygraph examiner); *Hannon v. State*, 475 S.W.2d 800, 803 (Tex.Cr.App.1972) (witness stated he had been put on the lie detector); *Renesto v. State*, 452 S.W.2d 498, 500 (Tex.Cr.App.1970) (unresponsive answer that witness had taken a polygraph); *Lee v. State*, 455 S.W.2d 316, 321–22 (Tex.Cr. App.1970) (revelation "that he [the defendant] did not have to take the lie detector"); *Charles v. State*, 424 S.W.2d 909, 913 (Tex.Cr.App.1967) (statement that two persons submitting to investigation had been tested); *Roper v. State*, 375 S.W.2d 454, 457 (Tex.Cr.App.1964) (disclosure that test given to defendant); *Paredes v. State*, 368 S.W.2d 620, 621 (Tex.Cr.App.1963) (statement that defendant was taken to a polygraph machine); *Giesen v. State*, 688 S.W.2d 176, 178 (Tex.App.1985, no pet.) (testimony that rape prosecutrix normally given polygraph exam). Conversely, in all cases where the results were made known to the jury over objection, the prejudice was held to be irreversible and a new trial imperative. *See e.g. Robinson [v. State]*, [550 S.W.2d 54, 61 (Tex.Crim.App.1977) ]; *Nichols v. State*, 378 S.W.2d 335, 338 (Tex.Cr.App.1964); *Jones v. State*, 680 S.W.2d 499, 502 (Tex.App.1983, no pet).

*Banda*, 727 S.W.2d at 681–82. The reviewing court also scrutinizes the manner in which the evidence is revealed. For example, the court reviews whether there was an apparent design to elicit the answer given. *Lee*, 455 S.W.2d at 322. In those cases cited in *Banda* where the polygraph information was revealed in an unresponsive answer, one cannot say the question was designed to elicit the inadmissible polygraph testimony. *See Hannon*, 475 S.W.2d at 803; *Renesto*, 452 S.W.2d at 500; *Lee, supra; Roper*, 375 S.W.2d at 456; and *Paredes*, 368 S.W.2d at 621; *see also Marini v. State*, 593 S.W.2d 709, 715–16 (Tex. Crim.App.1980). The reviewing court also inquires whether bad faith is evident. *See Roper*, 375 S.W.2d at 456. Additionally, in *Banda*, appellant did not renew his request for a mistrial when asked by the trial court what remedy he desired. Finally, the appellant in *Banda* waived admission of the lie detector results. *Banda*, 727 S.W.2d at 682.

Here, the prosecutor's direct question clearly was designed to elicit the answer given. Furthermore, the prosecutor's question had no purpose but to elicit poly-

graph testimony. *Compare Roper*, 375 S.W.2d at 457. Following the court's instruction to disregard the inquiry and response, appellant requested a mistrial and did not waive admission of the polygraph testimony.

■■■ It is improper to allow evidence even implying that such a test was taken if, as here, the effect of such evidence is implicitly to impeach the defendant's defensive theory and to bolster the State's case. *Stewart*, 705 S.W.2d at 234. Whether an instruction is sufficient to cure the harm depends upon whether the question and answer inferentially revealed to the jury that the witness took and passed a polygraph examination.

In *Nichols*, the polygraph testimony was elicited as follows:

> Q: "Without telling me any results, did you take a lie detector test about this?
> Mr. Mabry: (Appellant's counsel) "I object—"
> A: (By witness) "Yes sir."
> Mr. Mabry: "—to this and ask for a mistrial. A lie detector test is not introducible in evidence."
> THE COURT: "Sustain the objection, and the jury will not consider that for any purpose whatsoever.

*Nichols*, 378 S.W.2d at 336. In holding that the foregoing question required reversal, the Court of Criminal Appeals stated the following:

> While it is true that the trial court did instruct the jury to "not consider that for any purpose whatsoever," we think that the learned trial judge fell into error in not granting appellant's motion for a mistrial. We think it fair to observe that the only reason that anyone would possibly take a lie detector test would be to determine whether or not they were telling the truth. The state not only inquired about a test, the results of which were not admissible, but when it asked the question and received an affirmative reply it no doubt very effectively bolstered the prosecutrix's testimony before the jury.[5] This, we think was highly prejudicial to the rights of appellant, and the harm done was so great that no instruction from the court could remove it. This testimony in effect revealed the results of the lie detector test and this was inadmissible. The jury no doubt were convinced that the Assistant District Attorney knew the prosecutrix had taken and passed the test. We think that the appellant was here placed in the unfortunate position of being compelled to object to testimony which the jury no doubt felt was unfavorable to him (appellant). An impression must have been implanted in the minds of the jurors that the result of the lie detector test had been unfavorable to appellant or else appellant's counsel would not have objected to the question propounded by the state. The jurors, being lay persons, no doubt felt that the evidence of a lie detector test would reveal the truth and that appellant was attempting to suppress the truth from them by objecting to the question and keeping testimony from them. Appellant was placed in an unfavorable position before the jury by having to voice an objection. We think the question itself was highly improper, clearly inadmissible, and it was also prejudicial to appellant's rights.

> . . . .

> The practical effect of the testimony was to allow by inference, the admission of damaging evidence that would not have been legally admissible had it been submitted directly.

*Nichols*, 378 S.W.2d at 337–38.[6] We will now apply the *Nichols* factors to the facts in this cause.

First, as the court observed in *Nichols*, *supra*, the only reason anyone would take

---

5. "Bolstering" occurs when an item of evidence is improperly used by a party to add credence or weight to some earlier unimpeached piece of evidence offered by the same party. *Guerra v. State*, 771 S.W.2d 453, 474 (Tex.Crim.App.1988) *cert. denied* 492 U.S. 925, 109 S.Ct. 3260, 106 L.Ed.2d 606, *reh'g denied*, 492 U.S. 938, 110 S.Ct. 25, 106 L.Ed.2d 637 (1989).

6. Another basis for the exclusion of this type of evidence is that it usurps the fact finder's function on issues of credibility. *See Nichols*, 378 S.W.2d at 338.

a test is to determine whether the witness is telling the truth. Likewise, the only reason a person would *agree to take* a polygraph test is to determine whether that person is telling the truth. Neither taking, nor agreeing to take the test, in actuality, determines who is telling the truth. The test is inherently unreliable for this purpose. Its inherent unreliability notwithstanding, the purpose for the test is to determine whether a person is being truthful. Therefore, the only reason one would agree to take, or would actually take, the test is for the purpose of resolving the question of whether that person is telling the truth, whether that can actually be determined or not.

■ Second, when the State inquired of its witness, "did you *agree to take* a polygraph examination," and received an affirmative reply, did it effectively bolster his testimony before the jury? We answer in the affirmative, because, under the circumstances of this case, the only purpose for such a question and answer is to add credence or weight to Poe's earlier testimony.

■ Third, did this testimony in effect reveal the results of the lie detector test? The answer to this question turns on whether the fact that the witness *agreed to take the test* is sufficient to cause the jury to infer that the State would not ask such a question unless it knew that the witness had taken and passed the test. While not necessarily the case in every instance, under the facts of this cause, we conclude that the question and answer were clearly

calculated to implant in the minds of the jurors the impression that Poe had both taken and passed the test. We conclude this is so because the State purposefully initiated this line of questioning and presumptively would not elicit testimony unfavorable to its case. The jury no doubt were convinced that, but for the appellant's objection, the State would have proceeded to establish that Poe took and passed the test. As in *Nichols*, the appellant was placed in the position of being compelled to object to inadmissible testimony which the jury no doubt felt would reveal the truth but that appellant was attempting to suppress because it was unfavorable to him.[7] As in *Nichols*, we think an instruction on the part of the trial court is insufficient to remove the harmful effect created in the minds of the jurors.[8] The practical effect of the polygraph testimony was inferentially to admit damaging evidence that otherwise would not have been admissible.

The State also contends that the instant case is similar to *Stewart*, 705 S.W.2d 232, and that there is no reasonable possibility that the improper polygraph testimony contributed to appellant's conviction. In *Stewart*, the defendant tried to implicate a companion, Michael Riley, as the actual perpetrator of the offense (murder). The witness, Officer Rice, was asked by the prosecution if Riley had been subjected to the full spectrum of investigative tools at the officer's disposal, including polygraph tests. Rice responded affirmatively and testified that Riley had been cleared as a suspect.

---

**7.** If this were not so, then appellant would not object, since if the testimony were favorable to him, he would want the State to proceed with this line of questioning and reveal results favorable to his client, or reveal the fact that no test was actually taken and, therefore, the witness's testimony that he *agreed to take* the test may not form the basis for an inference that the test was taken and passed.

**8.** The State argues that, unlike the witness in *Nichols*, Poe was not a crucial witness and the State's case did not turn on his testimony. We disagree. Poe had been identified by appellant as the man who purportedly stole appellant's truck at an hour on the morning of the burglary that, if true, cast doubt on Schumpert's identification of appellant as the burglar and cast suspi-

cion on Poe as the burglar. It was the State's theory that the appellant falsely accused Poe of stealing his truck in order to prevent his own arrest for burglary. Clearly, Poe's testimony was important in destroying whatever reasonable doubt remained in the minds of the jurors regarding a possible misidentification by Schumpert, for if appellant's truck had been stolen, he could not have been the person driving it from the scene of the burglary. Poe's testimony and his credibility were both crucial to the State's case. Finally, Poe was called as a rebuttal witness, on re-open after all the evidence had been concluded and, thus, would be the final witness the jury would hear before beginning its deliberations. Clearly, Poe was a crucial witness in the case.

When it made its harmless error finding, the *Stewart* court took into consideration the fact that Riley was not a suspect before the polygraph testimony was introduced and his fingerprints were not found at the crime scene. Similarly, the State argues that because Poe was not a suspect before he gave his polygraph testimony and his prints were not found on the appellant's truck, his polygraph testimony did not contribute to appellant's conviction.

The opinion in *Stewart* does not rest, alone, on the two factors recited by the State. In addition, the Court considered that: (1) Stewart had been charged because he confessed the crime to his girlfriend; (2) Stewart told Rice that Riley did not go into the area of the building where the murder had been committed; (3) a bloody handprint at the scene matched Stewart's; (4) Stewart changed his story several times during the investigation; and (5) there was other evidence incriminating Stewart. *Stewart*, 705 S.W.2d at 234. Furthermore, the court of appeals also considered the fact that Stewart's defense counsel failed to object to Rice's statement that, "as a result of all this investigation" [including the polygraph test], Riley was cleared. In fact, Stewart's counsel subsequently questioned Rice about the accuracy of polygraph tests and Rice's expertise regarding them. *Id.*

No such evidence mitigates against harm here. Appellant did not confess to the burglary. He identified Poe as the man who stole his truck and did not withdraw his accusation. Nothing in the record indicates that appellant changed his story regarding his activities on the day of the burglary. There is no fingerprint to connect him to the burglary. Additionally, unlike *Stewart*, appellant's counsel properly preserved error on this issue, objecting to admission of the testimony and moving for a mistrial. Considering the state of the evidence at the point in time when Poe gave his polygraph testimony, we are unable to conclude that Poe's polygraph testimony made no contribution to appellant's conviction. We sustain appellant's point of error.

The judgment of the trial court is reversed and the cause is remanded for a new trial.