Self v. State 



TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-94-00456-CR







William Lee Self, Appellant




v.




The State of Texas, Appellee







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 167TH JUDICIAL DISTRICT


NO. 0943511, HONORABLE MIKE LYNCH, JUDGE PRESIDING







 A jury convicted appellant of murder and assessed punishment at fifty-years'
imprisonment. Tex. Penal Code Ann. § 19.02 (West 1994). (1) In two points of error, appellant
complains that the court erred in denying his motion for mistrial when a police officer revealed
that a witness had taken a polygraph exam and that there is legally insufficient evidence to
support a conviction for murder. (2) We will affirm the trial court's judgment of conviction.



BACKGROUND


 Appellant William Lee Self was convicted of murdering his mother, Pauline Self. 
The victim was found dead in her home after having been strangled with an electrical cord. At
the time of the murder, the victim was living with Clark Self ("Clark"), appellant's brother, in
a trailer home. Clark testified at trial for the State. There was no sign of forced entry at the
victim's home on the night of the murder. The evidence showed that the only people with keys
to the victim's home were the victim, appellant, and Clark.

 On cross-examination, appellant's counsel asked Austin Police Sergeant Vasquez
why he had not taken Clark's statement until days after the initial interview. Sgt. Vasquez
responded that he had not taken Clark's statement earlier because the police were busy focusing
on other details of the investigation. When recalling his and Clark's course of conduct on the day
of the murder, Sgt. Vasquez testified that he had returned from the scene of the crime to the
station house where Clark had taken a polygraph exam. Appellant's counsel objected that the
testimony regarding the polygraph exam was nonresponsive and prejudicial. The court sustained
the objection and instructed the jury to disregard the reference to the polygraph exam and not to
consider it for any purpose. Appellant's counsel moved for a mistrial, which was denied by the
trial court.



DISCUSSION
 In point of error one, appellant alleges
that the trial court improperly denied his motion for a mistrial when Sgt. Vasquez revealed that
Clark had taken a polygraph exam. Evidence of the results of a polygraph exam is not admissible
on behalf of the State or the defendant for any purpose. Nethery v. State, 692 S.W.2d 686, 700
(Tex. Crim. App. 1985), cert. denied, 474 U.S. 1110 (1986); Lee v. State, 455 S.W.2d 316, 321
(Tex. Crim. App. 1970). When evidence reveals that a polygraph exam was administered, but
does not expressly disclose the results of the exam, an instruction to disregard is generally
sufficient to cure any harm. See Banda v. State, 727 S.W.2d. 679, 681-682 (Tex. App.--Austin
1987, no pet.). The witness in the instant cause did not expressly disclose the results of the
polygraph exam, and the trial court gave an instruction to disregard.

 A curative instruction to disregard will be deemed insufficient to cure any harm,
however, when the witness impliedly reveals the results of a polygraph exam. See Nichols v.
State, 378 S.W.2d. 335, 338 (Tex. Crim. App. 1964); Sparks v. State, 820 S.W.2d 924, 927
(Tex. App.--Austin 1991, no pet.). In Nichols the State asked its own witness whether, without
disclosing the results, she had taken a polygraph examination concerning her accusation of rape. 
Likewise, in Sparks the State asked its witness whether he had taken a polygraph examination. In
both instances, the courts held that the questioning impliedly disclosed the results of the exams
and that therefore the error was incurable. In Sparks, this Court reasoned that the results were
implied largely "because the State [had] purposefully initiated th[e] line of questioning and
presumptively would not elicit testimony unfavorable to its case." Sparks, 820 S.W.2d at 929.
In determining whether the colloquy between witness and counsel impliedly reveals the results of
a polygraph examination, we earlier observed that courts have focused on whether counsel
intended to elicit the answer given and whether the witness mentioned the polygraph examination
in bad faith. Id. at 927.

 Unlike Nichols and Sparks, the objectionable testimony in the instant cause was a
nonresponsive answer to a question asked by the defense. Sgt. Vasquez's mention of the
polygraph was a nonresponsive answer to defense counsel's question about the time frame and
sequence of the events on the day of the murder. In both Nichols and Sparks it was the prosecutor
who, knowing the test results, specifically asked the witness about a polygraph examination. In
the present case, the cross-examining defense counsel could not have foreseen the answer to his
question. Moreover, the record does not reflect that Sgt. Vasquez answered the question in bad
faith.

 In Sparks, we detailed three issues to be considered in determining whether the
mention of a polygraph examination constitutes reversible error. First, we noted that the only
reason for administering a polygraph test is to determine whether a witness is telling the truth. 
Unlike in Nichols and Sparks, however, the jury in the instant cause was not told the nature or
subject of the questions asked Clark during the polygraph examination. Thus, the truth of his
answers and whether he "passed" does not conclusively imply anything.

 Second, we must ask whether Sgt. Vasquez's mention of the polygraph examination
bolstered Clark's testimony. Finally, we must determine whether the testimony impliedly
revealed the results of the polygraph examination.

 Appellant theorizes that the police originally suspected that Clark was the murderer. 
Appellant assumes that the police asked Clark whether he killed his mother and that Clark proved
his innocence when he "passed" the polygraph examination. Appellant contends that the jury must
have inferred that (1) Clark was asked whether he killed his mother; (2) he denied wrongdoing;
and (3) he "passed" the exam because he was the State's key witness, rather than an indicted
defendant. Positing that the only two suspects were Clark and appellant, appellant argues that the
mere mention of a polygraph exam bolsters the State's theory that he killed his mother.

 Appellant's argument however rests upon some unfounded assumptions. Appellant
assumes that (1) Clark was a suspect; (2) the police asked Clark about the murder; (3) he denied
killing his mother; and (4) the polygraph examination proved that he was being truthful. Given
that the State did not elicit Sgt. Vasquez's testimony, there is no basis on which to make these
assumptions.

 One could as easily speculate that Clark made statements implicating himself or
another or covered up for his brother. In this scenario, the polygraph could only impeach Clark's
veracity because he would have failed the exam. Given the conflicting possibilities of what
questions were asked of Clark and why, one cannot say what the results of the polygraph
examination were. Without knowing what questions were asked, the jury could not know Clark's
answers or whether the polygraph examination reflected truthful or false responses. We overrule
point of error one.

 In point of error two, appellant claims that there is legally insufficient evidence to
support a conviction for murder. Reviewing all the evidence in the light most favorable to the
verdict, we conclude that a rational trier of fact could have found the essential elements of the
offense beyond a reasonable doubt.

 The jury, as the trier of fact, is the judge of the credibility of the witnesses and the
weight to be given to their testimony. Tex. Code Crim. Proc. Ann. art. 38.04 (West 1979). The
jury is entitled to accept or reject all or any part of the testimony by witnesses for the State or the
accused. Sharp v. State, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986), cert. denied, 488 U.S.
872 (1988). Reconciliation of evidentiary conflicts is solely a function of the trier of fact. 
Bowden v. State, 628 S.W.2d 782, 784 (Tex. Crim. App. 1982). The fact-finder may draw
reasonable inferences and reasonable deductions from the evidence. Benavides v. State, 763
S.W.2d 587, 588-89 (Tex. App.--Corpus Christi 1988, pet. ref'd).

 In determining whether the evidence is legally sufficient to support the conviction,
we will consider the evidence in the light most favorable to the jury's verdict. After so viewing
the evidence, we will determine whether any rational trier of fact could have found beyond a
reasonable doubt the essential elements of the crime charged. Jackson v. Virginia, 443 U.S. 307,
318-19 (1979); Valdez v. State, 776 S.W.2d 162, 165 (Tex. Crim. App. 1989), cert. denied, 495
U.S. 963 (1990). This standard of review is applicable in both direct and circumstantial evidence
cases. Herndon v. State, 787 S.W.2d 408, 409 (Tex. Crim. App. 1990).

 On November 13, 1991, the night of the murder, appellant told Bill Ehrlich, a
friend with whom appellant lived, that he was going dancing. Appellant did not return home that
night and did not contact Ehrlich for over a year after the murder. In the time that appellant lived
with Ehrlich, this was the only time he failed to return the next day after having left for the
evening.

 Police attempted to locate appellant for fifteen months following the murder. 
During that time they contacted his sister, his brother, his friends, and his two ex-wives. Except
for limited contacts, none of these people heard from appellant or had knowledge of his
whereabouts. Although flight alone is not enough to support a guilty verdict, it is a circumstance
from which an inference of guilt may be drawn. Harris v. State, 645 S.W.2d. 447, 458 (Tex.
Crim. App. 1983).

 On November 18, four days after the murder, appellant telephoned his ex-wife, Bea
Self, and told her that his mother had killed herself. He explained that his mother had accidentally
wrapped her massager cord around her neck while asleep and was choked to death as she rolled
back and forth in her sleep. The fact that the murder weapon was a massager cord had not been
made public at that time; a newspaper story covering the murder simply described the murder
weapon as an electrical cord. Appellant then told his ex-wife that he and his brother Clark had
had their mother cremated. Clark, however, testified that he did not hear from appellant until
three months after the murder.

 When appellant did contact his brother on February 14, 1992, he first asked how
their mother was doing despite having previously told his ex-wife that his mother was dead. Clark
told appellant that their mother had been murdered and that the police wanted to speak with him. 
Appellant told Clark that he would contact the police, yet he failed to do so. Instead, appellant
continued his flight until police located him in Santa Monica, California on March 23, 1993.

 Appellant's car was found abandoned at a Houston motel on or about December
27, 1991. When Sergeant Vasquez examined appellant's car, he found a piece of Clark's mail. 
The evidence suggests that the letter was delivered to the address shared by Clark and the victim
sometime between November 6 and November 20, 1991. Clark and appellant were the only two
people with keys to the mailbox. Thus, despite appellant's contention, there was some evidence
linking him to the scene of the crime.

 Considering the evidence adduced at trial in the light most favorable to the verdict,
we hold that there is sufficient evidence for a rational jury to have found beyond a reasonable
doubt that appellant was guilty as charged in the indictment. We overrule point of error two.



CONCLUSION


 Having overruled both of appellant's points of error, we affirm the judgment of the
trial court.



 Marilyn Aboussie, Justice

Before Chief Justice Carroll, Justices Aboussie and B. A. Smith

Affirmed

Filed: March 20, 1996

Do Not Publish

1. [1]  This offense took place before September 1, 1994 and is governed by the law in effect at
the time the offense occurred. Because the code amendments effective September 1, 1994
have no substantive effect on this offense, we cite the current code for convenience.
2. [2]  Appellant has also filed a pro se brief alleging additional points of error. There is no
right to a hybrid representation. While not required to do so, we have reviewed the
contentions raised in the pro se brief and find them to be without merit. See Turner v. State,
805 S.W.2d 423, 425 n.1 (Tex. Crim. App. 1991), cert. denied, 502 U.S. 870 (1991).


App.--Corpus Christi 1988, pet. ref'd).

 In determining whether the evidence is legally sufficient to support the conviction,
we will consider the evidence in the light most favorable to the jury's verdict. After so viewing
the evidence, we will determine whether any rational trier of fact could have found beyond a
reasonable doubt the essential elements of the crime charged. Jackson v. Virginia, 443 U.S. 307,
318-19 (1979); Valdez v. State, 776 S.W.2d 162, 165 (Tex. Crim. App. 1989), cert. denied, 495
U.S. 963 (1990). This standard of review is applicable in both direct and circumstantial evidence
cases. Herndon v. State, 787 S.W.2d 408, 409 (Tex. Crim. App. 1990).

 On November 13, 1991, the night of the murder, appellant told Bill Ehrlich, a
friend with whom appellant lived, that he was going dancing. Appellant did not return home that
night and did not contact Ehrlich for over a year after the murder. In the time that appellant lived
with Ehrlich, this was the only time he failed to return the next day after having left for the
evening.

 Police attempted to locate appellant for fifteen months following the murder. 
During that time they contacted his sister, his brother, his friends, and his two ex-wives. Except
for limited contacts, none of these people heard from appellant or had knowledge of his
whereabouts. Although flight alone is not enough to support a guilty verdict, it is a circumstance
from which an inference of guilt may be drawn. Harris v. State, 645 S.W.2d. 447, 458 (Tex.
Crim. App. 1983).

 On November 18, four days after the murder, appellant telephoned his ex-wife, Bea
Self, and told her that his mother had killed herself. He explained that his mother had accidentally
wrapped her massager cord around her neck while asleep and was choked to death as she rolled
back and forth in her sleep. The fact that the murder weapon was a massager cord had not been
made public at that time; a newspaper story covering the murder simply described the murder
weapon as an electrical cord. Appellant then told his ex-wife that he and his brother Clark had
had their mother cremated. Clark, however, testified that he did not hear from appellant until
three months after the murder.

 When appellant did contact his brother on February 14, 1992, he first asked how
their mother was doing despite having previously told his ex-wife that his mother was dead. Clark
told appellant that their mother had been murdered and that the police wanted to speak with him. 
Appellant told Clark that he would contact the police, yet he failed to do so. Instead, appellant
continued his flight until police located him in Santa Monica, California on March 23, 1993.

 Appellant's car was found abandoned at a Houston motel on or about December
27, 1991. When Sergeant Vasquez examined appellant's car, he found a piece of Clark's mail. 
The evidence suggests that the letter was delivered to the address shared by Clark and the victim
sometime between November 6 and November 20, 1991. Clark and appellant were the only two
people with keys to the mailbox. Thus, despite appellant's contention, there was some evidence
linking him to the scene of the crime.

 Considering the evidence adduced at trial in the light most favorable to the verdict,
we hold that there is sufficient evidence for a rational jury to have found beyond a reasonable
doubt that appellant was guilty as charged in the indictment. We overrule point of error two.



CONCLUSION


 Having overruled both of appellant's points of error, we affirm the judgment of the
trial court.



 Marilyn Aboussie, Justice

Before Chief Justice Carroll, Justices Aboussie and B. A. Smith

Affirmed

Filed: March 20, 1996

Do Not Publish

1. [1]  This offense took place before September 1, 1994 and is governed by the law in effect at
the time the offense occurred. Because the code amendments effective September 1, 1994
have no substantive effect on this offense, we cite the current code for convenience.
2. [2]  Appellant has also filed a pro se brief alleging additional points of error. There is no
right to a hybrid repr