Perrilloux2 



TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-95-00011-CR







George Bryce Perrilloux, Appellant



v.



The State of Texas, Appellee







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 147TH JUDICIAL DISTRICT


NO. 0945232, HONORABLE TOM BLACKWELL, JUDGE PRESIDING







 Appellant George Perrilloux appeals from a conviction of aggravated sexual assault
and aggravated kidnapping. See Tex. Penal Code Ann. §§ 20.04 (West Supp. 1996),
22.021 (West 1994 & Supp. 1996). The jury sentenced him to life in the penitentiary plus a
$10,000 fine. In four points of error, Perrilloux complains that the trial court erred in admitting
into evidence certain items of clothing as well as a pen packet from Louisiana and in redacting a
certain portion of his statement in which he offered to submit to a polygraph examination. We
will affirm the judgment of conviction.



BACKGROUND


 In the early morning hours of February 20, 1994, the victim, J.P., returned home
from work to her north Austin apartment. After entering the security gates of her complex, she
drove to her mailbox to check her mail, leaving her car running as she did so. As J.P. returned
to her car, she noticed a man, whom she later identified as appellant, approaching from about thirty feet away. Deeming the man to be a "bum" who was "going to bother me for money," J.P.
ignored appellant and attempted to get into her car. Appellant then put a knife to her side, and
forced her into the car.

 Appellant got into the driver's seat of the car and pulled the victim's head down
into his lap. In response to the appellant's questions and fearing rape, J.P. told him that she was
married and pregnant, which was not true, and then pointed out the direction in which he needed
to drive to exit the complex. Although using a crude, more graphic terminology, appellant told
her that he was going to have sexual intercourse with her. Upon exiting the complex, J.P.
unsuccessfully attempted several times to raise her head out of appellant's lap, and on one of those
attempts, appellant allowed her to keep her head up for several seconds while he unfastened his
pants. Appellant then pushed her head back down. Despite her continuous struggling, appellant
forced his erect penis into her mouth, demanding in a graphic fashion that she perform oral sex
upon him. 

 Apparently losing his way, appellant pulled the victim's head out of his lap and
asked how to get to Rundberg Lane. Told he was going the wrong way, appellant pulled into a
video store parking lot and stopped the car. At this point, J.P. began screaming and
unsuccessfully attempted to jump from the car. Appellant again stopped the car and hit J.P. on
the head and in the face. She was somehow able to escape to the safety of the video store, leaving
appellant with a handful of her hair.

 The police were called, and appellant fled on foot. Police searching the area
spotted appellant who fled upon seeing a police car. Appellant was soon apprehended and
handcuffed. The officers who were on the scene testified to the fact that the fly on appellant's
pants was unzipped. A knife was found in appellant's pocket, and appellant appeared to be
intoxicated. Appellant was returned to the video store parking lot where J.P. identified him as
her assailant. At trial, an eyewitness to the attack, who called police to the scene from a
payphone across the street, corroborated J.P.'s identification of appellant as the attacker.



DISCUSSION


 In his first point of error, appellant contends that the trial court erred when it
permitted the State to introduce items of clothing which appellant contends were unreasonably
seized from Scott Klippel, appellant's court-appointed counsel.

 By way of background, Klippel picked up some of appellant's property in May
1994 from the Travis County Sheriff's Department, including the clothes appellant was wearing
at the time he was arrested. When, in October 1994, the State's attorneys demanded that Klippel
deliver to them the items that he picked up, Klippel refused to do so without a valid court order.

 The State requested that Klippel produce the items several times and issued at least
three subpoenas duces tecum between October 5 and 7, 1994. Although the court sustained
objections to the form of the first two of these documents, it eventually overruled the motion to
quash what appears to be the third attempted subpoena duces tecum. The court then compelled
Klippel to turn over appellant's clothing to the State's attorneys. (1) 

 Appellant contends that the purported subpoena duces tecum issued to Klippel in
this case was not a subpoena because it does not satisfy the requirements of chapter 24 of the
Texas Code of Criminal Procedure (the "Code"). Specifically, appellant alleges that the purported
subpoena duces tecum consists of only an application for a subpoena and a precept to summon the
witness and that it does not command Klippel to appear. Accordingly, appellant contends that the
items produced by Klippel were illegally seized and that their admission into evidence was
prohibited by article 38.23 of the Code (the "Exclusionary Rule"). 

 In response, the State contends that appellant is placing form over substance in
order to have these articles of clothing excluded and that the subpoena duces tecum in question
did meet the requirements of chapter 24. We agree.

 Evidence obtained in violation of the law is normally excluded. Tex. Code Crim.
Proc. Ann. art. 38.23(a) (West Supp. 1996). The primary purpose of the Exclusionary Rule is
to deter unlawful police conduct. Owens v. State, 861 S.W.2d 419, 420 (Tex. App.--Dallas 1993,
no pet.). But, when a defendant is in custody as a result of a lawful arrest, a warrant is not
required to seize, at the jail, the defendant's clothing. United States v. Edwards, 415 U.S. 800,
806-07 (1974); Marquez v. State, 725 S.W.2d 217, 234 (Tex. Crim. App.), cert. denied, 484
U.S. 872 (1987). It is well established that "clothing or other belongings may be seized upon
arrival of the accused at the place of detention and later subjected to laboratory analysis," the
results of which are admissible at trial. Edwards, 415 U.S. 803-04. 

 This case, however, is somewhat unusual because, while in custody, appellant
released the clothes he was wearing at the time of his arrest to Klippel, his court-appointed
attorney. Thus, rather than being able to legally examine appellant's clothes at the jail with only
minimal concern for appellant's expectation of privacy, the State in this case was forced to "jump
through a few hoops" before reacquiring this evidence. After three attempts at applying for a
subpoena duces tecum, the trial court compelled Klippel to turn over the clothes that appellant had
released to him. 

 The subpoena duces tecum at issue in this case states in pertinent part:



To the District Clerk of Travis County, Texas:


 You will please issue subpoena duces tecum in accordance with the law in
the above cause for the following witness whose testimony is material to the State: 
Scott Klippel, Travis County, Texas.


PLEASE APPEAR IN COURT AT THE TIME AND DATE DESIGNATED
AND BRING WITH YOU THE FOLLOWING PROPERTY:


 Any all [sic] clothing, property, and personal effects belonging to, worn
by, or possessed by George Bryce Perrilloux and seized or obtained by
Scott Klippel, from the Travis County Jail Facility, on or about May 17,
1994, including, but not limited to, shirts, shoes, socks, and underwear.


This witness is to be and appear, and produce in court the above-referenced
property, on the 7th day of October, 1994, at 11:00 o'clock A. M. at the
Courthouse in Austin, Texas, in the 147th District court of Travis County, Texas
to give testimony that is material to the State.



We conclude that the subpoena duces tecum in this case did command Klippel to appear and
otherwise adequately complied with the requirements of chapter 24 of the Code. Thus, the State
properly reacquired appellant's clothes, and this evidence was not excludable under article 38.23. 
Because appellant is placing form over substance in this case, his first point of error is overruled. 

 In point of error two, appellant asserts that the trial court erred in admitting
appellant's pants into evidence. The appellant contends that, in order for appellant's pants to be
relevant, the State had to demonstrate that the blood on the pants belonged to J.P. Further,
appellant complains that the probative value of the pants was greatly outweighed by the prejudicial
effect of admitting them into evidence. 

 Relevant evidence is defined as "evidence having any tendency to make the
existence of any fact that is of consequence to the determination of the action more probable or
less probable than it would be without the evidence." Tex. R. Crim. Evid. 401. Relevant
evidence "may be excluded if its probative value is substantially outweighed by the danger of
unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue
delay, or needless presentation of cumulative evidence." Tex. R. Crim. Evid. 403. Because
almost every piece of evidence introduced at trial will be prejudicial to the opposing party, only
relevant evidence that is unfairly prejudicial is excluded. "When Rule 403 provides that evidence
`may be excluded if its probative value is substantially outweighed by the danger of unfair
prejudice,' it simply means that trial courts should favor admission in close cases, in keeping with
the presumption of admissibility of relevant evidence." Montgomery v. State, 810 S.W.2d 372,
389 (Tex. Crim. App. 1990) (opinion on reh'g). As long as the trial court operates within the
boundaries of its discretion, its decision will not be disturbed on appeal. McFarland v. State, 845
S.W.2d 824, 837 (Tex. Crim. App. 1992), cert. denied, 113 S. Ct. 2937, 124 L. Ed. 2d 686
(1993); Montgomery, 810 S.W.2d at 391. 

 J.P. indicated that she was hit in the face and head several times and that her nose
bled pretty badly. An eyewitness testified that she saw appellant hitting the victim and that "[h]e
was jerking her head from side to side." Further, a police officer testified that J.P.'s face was
"pretty much covered with blood" and that her blouse had some spots of blood on it. Further,
appellant stipulated that the pants in question were the ones he was wearing at the time of his
arrest. If appellant was the assailant as J.P. and an eyewitness identified him to be, it is likely that
he would have some blood stains on the pants he was wearing at the time of his arrest. It does
not matter to our analysis that there was not enough blood on the pants such that it could be
accurately "typed" as belonging to J.P.; the blood was at least identified as that of a human. Appellant incorrectly asserts that it is the State's burden to prove that the probative
value outweighed the prejudicial effect. The opponent of a piece of evidence, appellant in this
case, has the burden to demonstrate not only the proffered evidence's negative attributes but also
that these negative attributes substantially outweigh any probative value. Montgomery, 810
S.W.2d at 377. By making only conclusory assertions in his brief, appellant has failed to meet
this burden. 

 Even so, in light of the evidence above, we conclude that the trial court did not
abuse its discretion in finding that appellant's blood-stained pants were relevant in helping to
determine whether it was appellant who sexually assaulted and kidnapped J.P. and that the
probative value of the pants was greatly outweighed by the prejudicial effect of admitting them
into evidence. Point of error two is overruled. 

 In his third point of error, appellant contends that the trial court erred in redacting
the portion of appellant's statement in which he offered to take a polygraph examination. 
Appellant asserts that the redacted portion of the statement was admissible for exactly the opposite
reason that evidence of an escape or attempted escape would be admissible in that it demonstrated
his willingness to cooperate. 

 Because of its inherent unreliability and its tendency to be unduly persuasive, the
results of a polygraph test are not admissible in Texas for any purpose, whether they are offered
by the State or the defendant. Nethery v. State, 692 S.W.2d 686, 700 (Tex. Crim. App. 1985),
cert. denied, 474 U.S. 1110 (1986); Banda v. State, 727 S.W.2d 679, 681 (Tex. App.--Austin
1985, no pet.). In all cases where the results of a polygraph test were made known to the jury
over proper objection, the prejudice was held to be irreversible and a new trial imperative. Sparks
v. State, 820 S.W.2d 924, 927 (Tex. App.--Austin 1991, no pet.) (listing examples). In cases
where lie detector evidence was only mentioned without disclosing any results, an instruction to
disregard was held to be sufficient. Id. 

 In this case, however, no polygraph evidence of any kind was ever presented to the
jury. The one sentence in appellant's statement referring to appellant's willingness to take a
polygraph was redacted before the statement was published to the jury. In Sparks, this Court noted
that "[n]either taking, nor agreeing to take the test, in actuality, determines who is telling the
truth." Sparks, 820 S.W.2d at 929. Although Sparks dealt with the State improperly bolstering
one of its witnesses, the same concept holds true in this case where appellant, who did not testify,
is attempting to bolster his defense.

 In moving to redact this portion of appellant's statement, the State was realistically
concerned that the jurors would believe that the reason appellant was not given a polygraph test,
even though he volunteered to take one, was because the State feared the results. After reading
this portion of appellant's statement, lay jurors could easily conclude (1) that, by not administering
the test, the State was attempting to suppress the truth from them, or (2) that, because the State
did not tell them otherwise, a test was actually given which appellant passed. The State would
be greatly disadvantaged by not redacting the sentence because there was no way for them to
correct any resulting misperceptions by the jurors. For example, even if appellant had actually
taken the polygraph test and failed, the results of such test would be inadmissible at trial. Further,
the jury would be instructed to disregard any polygraph testimony inadvertently surfacing at trial. 
In light of the inherent unreliability and unduly prejudicial nature of polygraph tests as well as the
potentially adverse effects on the jury, the trial court in this case did not err in allowing the State
to redact the portion of appellant's statement concerning polygraph testing. Point of error three
is overruled.

 In his fourth point of error, appellant asserts that the trial court erred in admitting
a "pen packet" from Louisiana. Appellant claims that the pen packet was not admissible in this
case because it failed to qualify as a self-authenticated document under Rule 902 of the Texas
Rules of Criminal Evidence. We disagree.

 A document may be properly authenticated under either Rule 901 or Rule 902 of
the Texas Rules of Criminal Evidence and need not be authenticated under both. Reed v. State,
811 S.W.2d 582, 586 (Tex. Crim. App. 1991). Rule 901 provides in pertinent part:



(a) General Provision. The requirement of authentication or identification as a
condition precedent to admissibility is satisfied by evidence sufficient to support
a finding that the matter in question is what its proponent claims.


(b) Illustrations. By way of illustration only, and not by way of limitation, the
following are examples of authentication or identification conforming with the
requirements of this rule:


. . .


(7) Public Records and Reports. Evidence that a writing authorized by law to be
recorded or filed and in fact recorded or filed in a public office, or a purported
public record, report, statement, or data compilation, in any form, is from the
public office where items of this nature are kept.



Tex. R. Crim. Evid. 901. Rule 901 does not limit the types of extrinsic evidence that can be used
to authenticate a document. Reed, 811 S.W.2d at 586; Spaulding v. State, 896 S.W.2d 587, 590
(Tex. App.--Houston [1st Dist.] 1995, no pet.). In Reed, the court of criminal appeals held that
certification under seal by the record clerk of the Texas Department of Corrections, Institutional
Division constituted extrinsic evidence that the packet in question was also an authentic copy of
the original documents retained in the file of the clerk of the convicting court. Reed, 811 S.W.2d
at 586. 

 In this case, as in Reed, the custodian of records of the Department of Corrections
of the State of Louisiana certified under seal that the copies in the pen packet were correct copies
relied upon by the respective agencies. The custodian certified as follows:



BEFORE ME, THE UNDERSIGNED NOTARY PUBLIC, PERSONALLY
CAME AND APPEARED ELLA PETERSON, WHO AFTER FIRST BEING
DULY SWORN DID DEPOSE AND SAY THAT SHE IS EMPLOYED AS THE
CUSTODIAN OF RECORDS FOR THE LOUISIANA DEPARTMENT OF
PUBLIC SAFETY AND CORRECTIONS. CORRECTIONS SERVICES, AT
OFFICE OF ADULT SERVICES. THE ATTACHED DOCUMENTS ARE
TRUE COPIES OF THE RECORDS OF THE LOUISIANA DEPARTMENT OF
PUBLIC SAFETY AND CORRECTIONS REGARDING George Perrilloux 
DOC#98502.



The Louisiana Department of Public Safety and Corrections is a public office authorized to keep
these records, given the fact that it relies on these records as its basis for admitting a prisoner and
holding him in custody. See id. at 587; Spaulding, 896 S.W.2d at 590. We find that the
custodian of records' certification of the documents in the pen packet constituted sufficient
extrinsic evidence that the copies are authentic. The authenticity of the documents, however, is
further supported by the fingerprint technician from the Austin Police Department who testified
that the fingerprints in the pen packet matched the fingerprints she took from appellant during trial
on a fingerprint card. See id. Accordingly, we find that the pen packet in this case was
sufficiently authenticated and properly admitted into evidence. (2) We overrule appellant's fourth
point of error.



CONCLUSION


 Because we have overruled all of appellant's points of error, we affirm the trial
court's judgment of conviction.



 

 Jimmy Carroll, Chief Justice

Before Chief Justice Carroll, Justices Aboussie and Kidd

Affirmed

Filed: August 28, 1996

Do Not Publish
1.   Because of the potential conflict caused by the issuance of the subpoena for Klippel,
appellant's attorney, the trial court eventually replaced him as appellant's counsel with
David Schulman.
2.   We find that the pen packet is also self-authenticating under Rule 902(4) of the
Texas Rules of Criminal Evidence.



by evidence sufficient to support
a finding that the matter in question is what its proponent claims.


(b) Illustrations. By way of illustration only, and not by way of limitation, the
following are examples of authentication or identification conforming with the
requirements of this rule:


. . .


(7) Pu