# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

NO. 03-02-00259-CR

**Tammy Balderrama, Appellant**

**v.**

**The State of Texas, Appellee**

**FROM THE DISTRICT COURT OF TRAVIS COUNTY, 299TH JUDICIAL DISTRICT
NO. 9014165, HONORABLE JON WISSER, JUDGE PRESIDING**

## M E M O R A N D U M   O P I N I O N

A jury convicted Tammy Balderrama of theft by a public servant. *See* Tex. Pen. Code Ann. § 31.03 (West 2003). For this third-degree felony, the district court sentenced Balderrama to ten years in prison, probated for ten years. By three points of error, Balderrama contends that the trial was tainted by the mention of polygraph examinations and that her confessions were involuntary. We will affirm the judgment.

On March 5, 1999, a bag of cash and check deposits disappeared from the Texas Department of Public Safety office in which Balderrama worked along with several other employees. Although there was a surveillance camera in the area where the theft occurred, there is no video of the theft because the camera was disabled the night before the theft during an upgrade of the

surveillance system. Corporal Stuart Baumsch, who was in charge of the surveillance system, testified that he incidentally disabled the camera by removing its lens while the camera was operating, causing a chip to burn out. Balderrama's theory was that Baumsch stole the bag. The stolen items were never found.

The investigation of the theft involved questionnaires, interviews, and polygraph examinations. Baumsch took a polygraph examination that proved inconclusive.[1] On March 15-16, 1999, Balderrama made a series of progressively more self-incriminating signed statements to Texas Ranger Lieutenant Ray Coffman. All four statements began with assertions that she initially took the bag to prove her and Baumsch's complaints about the laxness of office security. In the first statement, she alleged that the bag disappeared from the place she put it for safekeeping, but by the end of the fourth statement, she confessed that she took and spent all of the $9,600 cash.

This appeal arises from rulings about evidence of Balderrama's statements and polygraph examinations. Balderrama moved to suppress her signed statements, claiming that they were not voluntarily given; the court denied this motion. Despite granting a motion in limine prohibiting any reference to polygraph examinations, the court denied Balderrama's motion for mistrial after a second witness mentioned polygraph examinations.

By her first point of error, Balderrama complains that the court erred by failing to give a jury instruction to disregard testimony by Texas Ranger Lieutenant James Denman that Baumsch "was polygraphed." Evidence about polygraph examinations is not admissible in Texas because the

---

[1] The evidence of the results of Baumsch's polygraph test was elicited outside the presence of the jury.

2

results are too unreliable to be probative. *Crawford v. State*, 617 S.W.2d 925, 930 (Tex. Crim. App. 1981). Failure to make a timely objection or request an instruction to disregard waives the error unless the error is so prejudicial that an instruction to disregard could not have cured the error. *Norris v. State*, 902 S.W.2d 428, 442 (Tex. Crim. App. 1995); *see Janecka v. State*, 823 S.W.2d 232, 243-44 (Tex. Crim. App. 1990); *Cuellar v. State,* 943 S.W.2d 487, 489 (Tex. App.—Corpus Christi 1996, pet. ref'd). Whether an instruction is sufficient to cure the harm depends upon whether the question and answer inferentially revealed to the jury the result of a witness's polygraph examination. *See Sparks v. State*, 820 S.W.2d 924, 927-28 (Tex. App.—Austin 1991, no pet.). The reviewing court also scrutinizes whether there was an apparent design to elicit the information about the polygraph examination. *Id*. at 927. We may also consider the remainder of the evidence to determine whether the evidence about polygraph examinations contributed to the conviction. *Id*. at 929-30.

We find no reversible error. Balderrama did not object to Denman's testimony or request that the jury be instructed to disregard his testimony, so the error must be egregious to merit reversal. *See Norris*, 902 S.W.2d at 428. The testimony was not intentionally elicited; Denman's testimony came in response to defense counsel's question, "How many statements did you take from Corporal Baumsch?" Denman responded, "I believe I took—I visited with him and took an—oral statement, and I took a written statement from him. And he was polygraphed." Balderrama argues that the testimony was particularly prejudicial because it implied that Baumsch, an alternate suspect, took and passed a polygraph examination. We do not find any implication regarding the result of the polygraph examination. The jury could just as easily have assumed that Baumsch failed the

3

examination and was being prosecuted separately. An instruction to disregard could have cured any harm. Therefore, the failure to request an instruction waived error. We overrule point one.

By point two, Balderrama contends that the court erred by denying her motion for mistrial when Denman testified that Baumsch took a polygraph. A mistrial is required only when the testimony is clearly prejudicial to the defendant and is of such character as to suggest the impossibility of withdrawing the impression produced on the minds of the jurors. *See Ladd v. State*, 3 S.W.3d 547, 567 (Tex. Crim. App. 1999). We review the denial of a motion for mistrial under an abuse of discretion standard. *Id.* Balderrama requested a mistrial, not when Denman testified, but later when Baumsch himself mentioned taking a polygraph. As with Denman's mention of the polygraph, Baumsch's remark occurred during defense cross-examination. Defense counsel asked Baumsch, "Did you ever have another interview with Mr. Moore?" Baumsch replied, "Gordon? Is that the polygraph? Who is Mr. Moore?" At that point, defense counsel approached the bench and requested a mistrial, arguing that Baumsch's comment implied that Baumsch passed the polygraph examination.

We find no reversible error. Defense counsel did not intentionally elicit the testimony about the polygraph examination. Neither Denman nor Baumsch testified about whether Baumsch agreed to take the examination. Neither witness testified about the result of the test, nor did they state or imply that Baumsch was cleared as a result of an investigation that included a polygraph examination. Balderrama did not request an instruction to disregard; in our view, an instruction to disregard would have cured any harm from Baumsch's query about the polygraph examination. We conclude that Baumsch's mention of the polygraph did not contribute to Balderrama's conviction.

4

Finally, Balderrama challenges the voluntariness of her statements. A confession is involuntary or coerced if the totality of the circumstances demonstrates that the confessor did not make the decision to confess of her own free will. *Green v. State*, 934 S.W.2d 92, 99 (Tex. Crim. App. 1996). The focus is on whether the behavior of the State's law enforcement officials was such as to overbear the will of the accused and bring about a confession not freely determined. *Id*. at 99-100. We review a trial court's determination of the voluntariness of a confession for an abuse of discretion. *Peacock v. State*, 819 S.W.2d 233, 235 (Tex. App.—Austin 1991, no pet.). The trial judge, as fact finder at the hearing, is the exclusive judge of the credibility of the witnesses and the weight to be given their testimony. *Id*.

Balderrama contends that her statements were involuntary because of pressure and promises by the investigating officers. She gave the statements inside DPS headquarters outside the presence of her retained counsel. She testified that Ranger Coffman told her that she would be imprisoned for twenty years, and that the youngest of her three children would be twenty-two years old when she emerged from prison. He told her that the custody of the children would be awarded to the State and that they would likely be separated. He told her that if she cooperated, the State would let her resign, would not press charges, and would not seek removal of her children. Her statements reflect her fear of losing her children, losing her job, and going to prison.

The trial court did not abuse its discretion by denying the motion to suppress because evidence conflicted with Balderrama's version of events. In each of the statements, Balderrama states that she is giving a voluntary statement and waives in writing her rights to have an attorney present and to remain silent. Coffman acknowledged at trial telling her the range of punishment for

5

the offense, but denied threatening her with prosecution or promising her that she would not be prosecuted if she cooperated. He denied telling her that she would be allowed to resign or that it would not be on her record. He denied that anyone raised or discussed the issue of custody of her children. The court apparently found Coffman more credible and determined that Balderrama voluntarily gave the statements. We find no abuse of discretion in that determination.

We overrule Balderrama's points of error and affirm the judgment.

_____

David Puryear, Justice

Before Chief Justice Law, Justices B. A. Smith and Puryear

Affirmed

Filed:   June 19, 2003

Do Not Publish

6