In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana

______________________________

No. 06-04-00008-CR
______________________________


QUINTON WADE WRIGHT, Appellant
 
V.
 
THE STATE OF TEXAS, Appellee


                                              

On Appeal from the 8th Judicial District Court
Franklin County, Texas
Trial Court No. 7514


                                                 



Before Morriss, C.J., Ross and Carter, JJ.
Opinion by Justice Ross


O P I N I O N

          Quinton Wade Wright was convicted by a jury of indecency with a child by sexual
contact.


 The jury assessed Wright's punishment at five years' imprisonment, and he was
sentenced accordingly. 
          Wright appeals, alleging the trial court erred: 1) in allowing the State to introduce
evidence he had taken a polygraph examination, 2) in admitting into evidence a videotaped
forensic interview of the victim, and 3) in failing to admit evidence about other allegations
of sexual misconduct made by R.C. against other men. We reverse and remand for a new
trial based on Wright's first point of error. We discuss Wright's second point of error in the
interest of justice, and we find that error was not preserved in connection with his third
point of error.
Background Facts
          The sufficiency of the evidence is not challenged. Briefly, Wright's stepdaughter,
R.C., testified Wright molested her on two occasions: once in the car when he reached
through either her shirt sleeve or a hole in her shirt and touched her breast; and in their
home while she sat on a couch and Wright sat on the floor, and he reached beneath her
shorts and underwear and touched her vagina.
Standard of Review for Admission of Evidence
          The admission of evidence is a matter within the discretion of the trial court. Avila
v. State, 18 S.W.3d 736, 739 (Tex. App.—San Antonio 2000, no pet.). Accordingly, the
trial court's admission of evidence is reviewed under an abuse of discretion standard. See
Montgomery v. State, 810 S.W.2d 372, 379–80 (Tex. Crim. App. 1990). A trial court
abuses its discretion when it acts without reference to proper guiding rules or principles,
and therefore acts arbitrarily and unreasonably. See In re B.N.F., 120 S.W.3d 873, 877
(Tex. App.—Fort Worth 2003, no pet.). 
Evidence of Polygraph Examination
          The State told the jury in its opening statement that the investigator in this case
offered Wright the opportunity to take a polygraph examination. Wright objected, and a
bench conference was held. Wright argued that the prejudice of any mention of a
polygraph examination outweighed its probative value and that, if the jury was not told
Wright had passed the examination, it would assume he had failed it. After being assured
by the State that the results of the examination would not be disclosed to the jury, the trial
court overruled Wright's objection. The State resumed its opening statement, telling the
jury, "by the way, polygraph examination results are not admissible in any courtroom in the
State of Texas. The results will not [be] admitted today. Okay? And that needs to be
clear. That's not something that's going to be evidence."
          Burt Golden testified he administered a polygraph examination to Wright. Wright
objected to Golden's testimony and to the State's reference to the polygraph examination. 
In a hearing outside the presence of the jury, the trial court overruled Wright's objection,
but admonished the State that the results of the polygraph examination were not to be
divulged. The court then granted Wright's request for a "running objection regarding
anything about the polygraph examination." Golden then testified in the presence of the
jury that, as part of his testing procedure, he generally asks the person to whom the
examination is being administered a series of "pre-test" questions. During the pretest
interview of Wright, Wright told Golden he had once reached through R.C.'s shirt and
touched her skin, but not her breast. 
          Gerry Allen, an investigator for the sheriff's office, testified that he was the one who
offered Wright the opportunity to take a polygraph examination and that he transported
Wright to and from the examination site. He testified that, on the way back from this
examination, Wright talked about R.C. and her sister walking around the house without
shirts on and with their shorts pulled up in a provocative way.
          A trial court may not admit polygraph examination evidence or consider it for any
purpose. Buckley v. State, 46 S.W.3d 333, 336 (Tex. App.—Texarkana 2001, pet. dism'd,
untimely filed). The United States Supreme Court has written, "there is simply no
consensus that polygraph evidence is reliable." United States v. Scheffer, 523 U.S. 303,
309 (1998). However, the Texas Court of Criminal Appeals has held that, where a witness
gives an unresponsive answer which mentions a polygraph test but does not mention the
results of such test, there is no error in failing to grant a mistrial where the objection has
been sustained and the jury instructed to disregard. Richardson v. State, 624 S.W.2d 912,
914–15 (Tex. Crim. App. [Panel Op.] 1981).
          In Buckley, we described a two-step analysis in considering the propriety of
questions eliciting testimony concerning a polygraph examination: "(1) whether the
question exhibited bad faith by being designed to elicit that a polygraph was taken or what
the results of that polygraph were; and (2) whether the effect of the evidence is to impeach
the defendant's defensive theory or to bolster the state's case." Buckley, 46 S.W.3d at
337. The girlfriend of the defendant in that case testified, in relating things Buckley had
said to her, that Buckley accused her of telling people he had failed a polygraph test. The
trial court overruled the defense's motion for mistrial and instructed the jury to disregard
the statement. Finding that the "statement d[id] not reflect the results of such a test or
even whether Buckley took such a test," we held the witness' inadvertent statement was
properly cured by the trial court's instruction to disregard and overruled the point of error. 
Id. 
          Where the defense insists on a mistrial, the sufficiency of an instruction to disregard
polygraph evidence generally depends on whether the results of the examination were
revealed to the jury. In Sparks, the state called a rebuttal witness, who had been accused
by Sparks of committing the burglary for which Sparks was on trial. Sparks v. State, 820
S.W.2d 924, 927 (Tex. App.—Austin 1991, no pet.). In Stewart, the court noted that a
reviewing court shall consider the circumstances in which the polygraph evidence is
admitted. "[I]t is improper to allow evidence even implying that such a test was taken if the
effect of such evidence is to implicitly impeach the defendant's testimony or defensive
theory, or to bolster the State's case." Stewart v. State, 705 S.W.2d 232, 234 (Tex.
App.—Texarkana 1986, pet. ref'd). In Stewart, the state was allowed to introduce an
investigator's testimony that an individual other than Stewart had submitted to a polygraph
examination, and as a result, that person "was cleared and charges were not filed" against
him. Id. at 233. 
          The instant case is markedly different from those described above. Here, the State
was allowed, over Wright's objections, to specifically point out that Wright had taken a
polygraph examination. The cases cited above address situations where a witness
inadvertently mentions that a polygraph test was administered. The issue here is not
whether the results of the polygraph test were made known to the jury, or whether
Buckley's "two-step" analysis should even be applied. Rather, the issue is whether
evidence was presented that Wright took a polygraph examination and whether such
evidence operated to prejudice his right to a fair trial. Whether the State acted in "bad
faith" is not an adequate analysis in light of the circumstances of this case. Letting a jury
know that Wright submitted to a polygraph examination, then leaving the jurors to their own
conclusions on whether he was shown to be deceptive or truthful in that examination, is not
acceptable. In light of the consistent holdings addressing the inadmissibility of polygraph
evidence, we hold that the affirmative and intentional presentation of polygraph evidence
that was permitted in this case was error.
          This holding does not mean the statements made by Wright to the polygraph
examiner during the pretest interview and to the investigator on the way home were not
admissible. Statements made during a polygraph pretest interview, during the polygraph
examination itself, or during an interview after the examination, may be admissible
evidence, but the proper procedure for introducing such evidence before the jury is to
redact from such evidence all references to the polygraph examination. This was the
course taken and approved in Hoppes.


 There, the state sought to impeach Hoppes with
statements made to the polygraph examiner. During the examination, Hoppes told the
examiner the lights of a car at the murder scene were pointed one way; at trial, Hoppes
said the car and its lights faced another direction. The trial court allowed the state to
introduce the inconsistent statement made by Hoppes during the polygraph examination,
but redacted all references to the polygraph examination itself and specifically admonished
the parties not to discuss the polygraph examination itself. Hoppes, 725 S.W.2d at 536. 
By following this procedure in the instant case, Wright's statements to Golden and Allen
could have been admitted without disclosing the fact that a polygraph examination was
taken. 
          We now turn to a harm analysis. In our review of nonconstitutional error, we are to
disregard errors, defects, irregularities, or variances that do not affect substantial rights of
the accused. Tex. R. App. P. 44.2(b). A "substantial right" is affected when the error had
a substantial and injurious effect or influence in determining the jury's verdict. King v.
State, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997); see Tex. R. App. P. 44.2(b). If, on the
record as a whole, it appears the error "did not influence the jury, or had but a slight effect,"
we must conclude the error was not harmful and allow the conviction to stand. Johnson
v. State, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998). 
          We cannot say, with confidence, that the State's discussion of the polygraph
examination, and having two witnesses testify about that examination, did not influence the
jury or had but a slight effect. Much has been made of the inherent unreliability of
polygraph examinations, and hence their inadmissibility in criminal trials in Texas. Despite
the cautions of both the trial court and the attorney for the State, we find that broadcasting
to the jury that Wright was given a polygraph examination presented too great a danger
that the jury speculated on the examination's outcome. Such speculation is especially
likely in a case like this one where there is no scientific evidence substantiating the
conviction and where the validity of that conviction is largely dependent on the credibility
of the witnesses. Under these circumstances, our confidence in the outcome of this trial
is undermined. Finding harm, we sustain Wright's first point of error and reverse the
judgment and remand this case for a new trial. 
Evidence of the Videotaped Interview
          In his second point of error, Wright complains the trial court erred when it allowed
the State to introduce a videotaped interview of the child victim. Kathy Smedley testified
for the State. She runs the Northeast Texas Children's Advocacy Center and is trained
and certified to conduct forensic interviews with children. Smedley testified she is a
licensed professional counselor and certified marriage and family counselor. She testified
that the forensic interview she conducts is used to preserve evidence, reduce the number
of times a child must be interviewed about potentially traumatic abuse, and is also used
to determine whether to refer the child to mental health services or for medical treatment,
such as a sexual assault nurse examination. In this case, R.C. was referred for
psychological counseling. Specifically, Smedley said she consulted with Tamika Hughes,
one of the local Child Protective Services caseworkers, about arranging counseling
services for R.C. Smedley said she specifically ruled out having R.C. submit to a sexual
assault nurse examination because nothing in the child's interview suggested penetration
or anything which would lead to discernible evidence being discovered in such an
examination. 
          The State answered Wright's trial objections by arguing that the videotape was
admissible under the hearsay exception noted in Texas Rule of Evidence 803(4),


 where
statements made for purposes of medical diagnosis are excepted from the rule precluding
the admission of hearsay. The trial court overruled Wright's objections and allowed
Smedley to discuss the videotape and allowed the State to play the videotape for the jury. 
          The medical treatment exception to the hearsay rule (i.e., Tex. R. Evid. 803(4)) is
based on the assumption that the patient appreciates that the effectiveness of the
treatment may depend on the accuracy of the information provided to the physician. 
Fleming v. State, 819 S.W.2d 237, 247 (Tex. App.—Austin 1991, pet. ref'd). There is no
requirement that a witness expressly state that the hearsay declarant recognized the need
to be truthful in her statements for the medical treatment exception to apply. Instead, "the
reviewing court must look to the record to see if it supports a conclusion that the young
child understood why she needed to be honest when speaking to the caregiver." Beheler
v. State, 3 S.W.3d 182, 188–89 (Tex. App.—Fort Worth 1999, pet. ref'd).
          Here, however, there is no evidence that R.C., who was thirteen years old at the
time of her interview, understood that the effectiveness of any counseling she might
receive from Smedley depended on the accuracy of the information she provided. 
Smedley discussed with R.C. the difference between telling the truth and telling a lie, but
only in the context of gathering accurate information. At no time was R.C. made aware of
the importance of this difference in Smedley being able to effectively counsel, diagnose,
or assess her. As for R.C.'s understanding of the purpose of the interview, Smedley
testified she did not know what R.C. thought about why she was at the forensic interview.
While there is evidence Smedley considered that the interview was for assessment and
possibly diagnostic purposes, such intent on the part of the interviewer does not provide
the guarantees of trustworthiness required when dealing with hearsay. Without anything
to indicate that R.C. understood the purpose of the interview, and that the importance of
being truthful was so Smedley could effectively assess or diagnose her, it was error to
admit the videotaped statements. 
Evidence of Other Allegations of Sexual Misconduct

          In his final point, Wright complains the trial court stopped him from questioning the
State's witnesses about other allegations of sexual misconduct R.C. made against other
individuals. Wright objected to this limitation under Texas Rules of Evidence 403, 404(b),
412, and 608. 
          On appeal, Wright contends the trial court's limitation deprived him of his 
Confrontation Clause rights guaranteed by the Sixth Amendment to the United States
Constitution. Wright did not make a Sixth Amendment objection at trial. The point of error
on appeal must correspond or comport with the objection made at trial. Dixon v. State,
2 S.W.3d 263, 273 (Tex. Crim. App. 1998); Thomas v. State, 723 S.W.2d 696, 700 (Tex.
Crim. App. 1986). Where a trial objection does not comport with the issue raised on
appeal, the appellant has preserved nothing for review. Tex. R. App. P. 33.1(a); Ibarra v.
State, 11 S.W.3d 189, 197 (Tex. Crim. App. 1999). Wright did not fairly and specifically
object to the exclusion of this evidence on the constitutional due process basis he now
urges on appeal. He has not preserved error. His third point of error is overruled. See
Gutierrez v. State, 71 S.W.3d 372, 378–79 (Tex. App.—Amarillo 2001, pet. ref'd).
Conclusion
          Because we hold the admission of polygraph examination evidence was harmful
error, we reverse the judgment and remand the case for a new trial.
 

                                                                          Donald R. Ross
                                                                           Justice
 
Date Submitted:      December 20, 2004
Date Decided:         January 6, 2005

Publish



WPHide(\'WPFootnote3\')">Close' );
 document.write( '' );
 }

 Therefore, we cannot conclude the
trial court abused its discretion in finding that the statement did not meet the requirements of the
present sense impression exception to the hearsay rule. Accordingly, we deny the Danielses' final
point of error.
            Having denied all of the Danielses' points of error, we affirm the judgment of the trial court.
 


                                                                        Jack Carter
                                                                        Justice
 
Date Submitted:          September 6, 2005
Date Decided:             October 25, 2005